No. 23-35107

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

COMMITTEE TO RECALL DAN HOLLADAY,
JEANA GONZALES, and
ADAM MARL,
*Plaintiffs – Appellants*,

v.

JAKOB WILEY, City Recorder for Oregon City, in his official capacity,
*Defendant – Appellee*,

and

STATE OF OREGON,
*Intervenor-Defendant – Appellee.*

**OPENING BRIEF OF
COMMITTEE TO RECALL DAN HOLLADAY,
JEANA GONZALES, and ADAM MARL**

On Appeal from the United States
District Court of Oregon, Honorable Michael W. Mosman
Case No: 3:20-CV-01631-YY
_____

Jesse A. Buss, OR Bar No. 122919
Willamette Law Group, PC
411 Fifth Street, Oregon City OR 97045-2224
Tel: 503-656-4884, Email: jesse@WLGpnw.com
*Attorney for Plaintiffs-Appellants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

I.    **Introduction** ..............................................................................................1

II.   **Jurisdiction** ...............................................................................................1

III.  **Issues Presented** .......................................................................................2

    A. State sovereign immunity for municipal officers .........................................2

    B. Election law mootness doctrine – same defending party.............................2

    C. Certification of question of state law to Oregon Supreme Court ................3

    D. First Amendment pleading requirements and opportunity to amend
       complaint...................................................................................................3

    E. Weighing evidence at the motion to dismiss stage ......................................3

IV.   **Statement of Statutory and Regulatory Authority** .........................................4

V.    **Statement of the Case**................................................................................4

    A. Material Facts................................................................................................4

    B. Procedural History and Rulings Presented for Review ...............................5

VI.   **Summary of Argument** ..............................................................................7

    A. State sovereign immunity for municipal officers .........................................7

    B. Certification of question of state law to the Oregon Supreme Court ..........7

    C. Election law mootness doctrine – same defending party.............................8

    D. First Amendment pleading requirements and opportunity to amend
       complaint...................................................................................................9

i

E.  Weighing evidence at the motion to dismiss stage ......................9

**VII. Argument** ..........................................................................................10

A.  The City is not entitled to sovereign immunity under the Eleventh
Amendment and *Pennhurst* ......................................................10

1.  Reviewability and Standard of Review ...............................10

2.  The district court applied the incorrect Eleventh Amendment state
sovereign immunity analysis ...............................................11

B.  Defendant Marl's claims are not moot simply because he did
not allege that he will be involved in a future *Oregon City* recall
petition campaign ......................................................................15

1.  Reviewability and Standard of Review ...............................15

2.  Argument ..............................................................................16

C.  The district court should have certified Appellants' question of state law
to the Oregon Supreme Court ....................................................20

1.  Reviewability and Standard of Review ...............................20

2.  Argument ..............................................................................20

a. Legal standard for certification to the Oregon Supreme Court .......21

i.  The mandatory statutory criteria for certification ............22

ii.  The discretionary criteria for certification .....................23

b. The *Western Helicopter* factors favor certification ........................24

i.  Mandatory statutory factors ...........................................24

ii.  Discretionary *Western Helicopter* factors .....................31

D. Appellants' Second Amended Complaint properly pleads a First Amendment claim. And if it does not, then amendment, rather than dismissal, is appropriate .............................................................37

  1. Reviewability and Standard of Review................................................37

  2. The Second Amended Complaint properly pleads a first Amendment claim .........................................................................................38

  3. If the Court finds Appellants' First Amended claim-related factual allegations to be insufficient, the Court should allow Appellants to amend their complaint to include additional supporting factual allegations...........................................................................................44

E. The Findings and Recommendations improperly reach, and rule on, the merits of Appellants' facial challenge under the First Amendment ........48

  1. Reviewability and Standard of Review................................................48

  2. Argument........................................................................................49

**VIII. Conclusion** ................................................................................................53

CERTIFICATE OF COMPLIANCE

STATUTORY AND REGULATORY ADDENDUM

iii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012)...17, 44, 46

*Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) .....................................38, 39, 43, 52

*Armatta v. Kitzhaber*, 327 Or. 250 (1998) ...............................................................33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................40

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021) ............................37

*Buffin v. California*, 23 F.4th 951 (9th Cir. 2022)......................................11, 12, 13

*Childress v. Costco Wholesale Corp.*, 978 F.3d 664 (9th Cir.) ...............................20

*Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir. 2021).........................13, 14, 15

*Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008) .............................................18

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019) ..............49

*Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990)......................................................12

*Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082 (9th Cir. 2003) ................................21

*Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966)..................................39

*Int'l Org. of Masters, Mates & Pilots v. Brown,* 498 U.S. 466 (1991)....................19

*ITSI T.V. Prods., Inc. v. Agric. Ass'ns,* 3 F.3d 1289 (9th Cir. 1993) ......................14

*Joyner v. Mofford,* 706 F.2d 1523 (9th Cir. 1983)...................................................18

*Kroessler v. CVS Health Corp.*, 977 F.3d 803 (9th Cir. 2020)................................38

*Lee v. Schmidt-Wenzel*, 766 F.2d 1387 (9th Cir. 1985).....................................18, 19

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)......................................................49

*Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988) ............2, 13, 14, 15

*Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)...................................13

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021) ........10

*Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008).....................................................39

*Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161 (9th Cir. 2021) ..........13

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)..................*passim*

*Porter v. Jones,* 319 F.3d 483 (9th Cir. 2003) .........................................................18

*Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ...................24, 32

*Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940 (9th Cir. 2019) ..............16

*Schaefer v. Townsend*, 215 F.3d 1031 (9th Cir. 2000) .............................................19

*State ex rel. Clark v. Harris*, 74 Or. 573 (1914).........................................28, 29, 30

*State ex. rel. Frohnmayer v. Oregon State Bar*, 307 Or. 304 (1989) .....................13

*Syngenta Seeds, Inc. v. Cty. of Kauai*, 842 F.3d 669 (9th Cir. 2016) .....................20

*Weiner v. San Diego Cty.*, 210 F.3d 1025 (9th Cir. 2000)...........................11, 12, 13

*Western Helicopter Services, Inc., v. Rogerson Aircraft Corporation*, 311 Or. 361, 811 P.2d 627 (1991) ..............................................................................*passim*

*Wochos v. Tesla, Inc*., 985 F.3d 1180 (9th Cir. 2021) .............................................38

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) ........................................17, 19

# Constitutions

U.S. Constitution, 1st Amendment ....................................................*passim*

U.S. Constitution, 14th Amendment ........................................................1

Oregon Constitution, Article II, Section 18 ..................................*passim*

Oregon Constitution, Article II, Section 18(8) ...............................29

# Statutes

Or. Rev. Stat. § 9.010(2) .........................................................13

Or. Rev. Stat. § 28.200 – 255 ...........................................20 , 21

Or. Rev. Stat. § 28.200 ...............................................21, 22, 24, 25

Or. Rev. Stat. § 28.205 .............................................................21

Or. Rev. Stat. § 28.210 .........................................................21, 25

Or. Rev. Stat. § 249.875 ..................................................*passim*

Or. Rev. Stat. § 249.875(1) ...............................21, 25, 26, 27, 33

# United States Code (U.S.C.)

28 U.S.C. § 1291 ...............................................................2

28 U.S.C. § 1331 ...............................................................2

28 U.S.C. § 1367 ...............................................................2

42 U.S.C. § 1983 .........................................................12, 13

42 U.S.C. § 1988 ............................................................12

# Other Authority

9th Cir. R. 28-2.7 ............................................................................4

37 Op. Atty Gen. Ore 1399 (1972) .........................................52

D. Or. Local Rule 83-14 .........................................................20

D. Or. Local Rule 83-14(a) ...............................................7, 21

Fed. R. App. P. 4(a)(1)(B) ........................................................2

Fed. R. Civ. P. 8(a)(2) ............................................................39

Fed. R. Civ. P. 12(b)(1) ............................................................6

Fed. R. Civ. P. 12(b)(6) ..........................................6, 10, 37, 49

Or. Laws 1933, ch. 381, § 2 ...................................................28

# I. INTRODUCTION

This is an election law case implicating the Oregon Constitution and the First Amendment to the U.S. Constitution.

In 2020, the Committee to Recall Dan Holladay, Jeana Gonzales, and Adam Marl ("Appellants") were proponents of a successful municipal recall petition directed against now-former Oregon City Mayor Dan Holladay. Their signature-gathering campaign was subject to an Oregon statute, Or. Rev. Stat. § 249.875, which purports to limit recall signature petition drives to 90 days. Before they successfully qualified for the ballot, Appellants brought this action to challenge the 90-day statutory limitation as inconsistent with Article II, section 18 of the Oregon Constitution and the First and Fourteenth Amendments to the U.S. Constitution. Appellants asserted both facial and as-applied constitutional challenges, but the district court dismissed them all for various reasons.

Appellants now seek reversal and remand on their facial challenges, and seek certification of a question of state law to the Oregon Supreme Court. Appellants do not pursue their as-applied challenges on appeal.

# II. JURISDICTION

The district court had federal question jurisdiction under Appellants' First and Fourteenth Amendment claims and supplemental jurisdiction over the state

law claims. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367. This Court has jurisdiction because Appellants appeal from the district court's final judgment dismissing all of Appellants' claims. 28 U.S.C. § 1291. This appeal was timely under Fed. R. App. P. 4(a)(1)(B) because judgment was entered on January 10, 2023, and the appeal was filed on February 9, 2023. 1-ER-2; 3-ER-373–375.

### III.  ISSUES PRESENTED

**A.     State sovereign immunity for municipal officers**

In the Ninth Circuit a municipal officer is entitled to state sovereign immunity under the Eleventh Amendment if they carry their burden to show they are "an arm of the state" under the five-factor test set forth in *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988). Does a district court err in completely failing to apply the *Mitchell* factors?

**B.     Election law mootness doctrine – same defending party**

The "capable of repetition, yet evading review" exception to mootness is commonly applied in election law cases, and the Ninth Circuit does not require a showing that the same defending government or party will be involved in a future dispute in order to trigger that exception. Does a district court err in declining to apply the "capable of repetition, yet evading review" exception to mootness on the sole ground that the future defendant may be located in a different jurisdiction

within the same state?

## C.     Certification of question of state law to Oregon Supreme Court

The District of Oregon has adopted a local rule governing certification to the Oregon Supreme Court. Does a district court abuse its discretion in failing to follow that local rule to certify a question of state law?

## D.     First Amendment pleading requirements and opportunity to amend complaint

An election law restricting signature-gathering petitions can be facially invalid under the First Amendment if, as a result of the election law, "reasonably diligent" petitioners cannot "normally" qualify for the ballot. Normal pleading requirements apply to such claims. Does a district court err in dismissing a First Amendment claim where adequate factual allegations are made? And even if a complaint's First Amendment claim-related factual allegations are deficient, does a district court err in refusing to grant leave to amend the factual allegations associated with that claim where such amendment would not be futile?

## E.     Weighing evidence at the motion to dismiss stage

At the motion to dismiss stage, courts must assume the truth of well-pleaded allegations in the complaint. Evidence supporting or opposing those allegations is not weighed or otherwise considered. Accordingly, does a district court err in

weighing and ruling on "evidence" at the motion to dismiss stage?

## IV. STATEMENT OF STATUTORY AND REGULATORY AUTHORITY

Pertinent statutory provisions, regulations, and other authorities are included in the attached Statutory and Regulatory Addendum. 9th Cir. R. 28-2.7.

## V. STATEMENT OF THE CASE

### A. Material Facts

The district court summarized the factual background as follows:

"This dispute arises from a legal challenge surrounding Oregon's recall laws. Article II, Section 18 of the Oregon Constitution allows for the recall of '[e]very public officer in Oregon,' and proscribes procedures for the recall process. As relevant to this case, the Oregon Constitution requires that to initiate a recall election, a petitioner must receive support (often in the form of a signature) from at least fifteen percent of the official's constituency. *Id.* Crucially, this provision of the Oregon Constitution is silent regarding the amount of time a petitioner has to collect a sufficient number of signatures. However, a state statute—O.R.S. § 249.875—imposes a deadline of 90 days for a petitioner to collect the requisite number of signatures. Plaintiffs challenge the legality of this statute, arguing that the 90-day deadline unconstitutionally infringes upon the recall authority contained in the Oregon Constitution and free speech and political expression rights protected by the U.S. Constitution.

"The specific events in this dispute began on June 22, 2020, when plaintiffs filed a petition seeking to collect signatures for the prospective recall of then-Oregon City Mayor Dan Holladay. Second Am. Compl. ¶ 18, ECF 42. The next day, then-City Recorder Kattie Riggs accepted the petition, issued signature collection forms, and established a threshold of 2,400 valid signature for plaintiffs to meet.

*Id.* ¶ 20. Riggs also established, in accordance with O.R.S. § 249.875(1), a 90-day period for plaintiffs to collect signatures, thus requiring that plaintiffs meet the signature threshold by September 21, 2020, to trigger a recall election. *Id.* ¶ 21.

"On August 14, 2020 (the 52nd day of the period), plaintiffs requested that Riggs withdraw the September 21, 2020 signature collection deadline, alleging the collection period was unconstitutional on its face or as-applied during a public health crisis. *Id.* ¶ 22. Six days later, on August 20, 2020, Riggs refused plaintiffs' request. *Id.* ¶ 23. Plaintiffs commenced this suit on September 18, 2020, three days before the end of their signature collection period. ECF 1. On September 21, 2020, the deadline for signature collection, plaintiffs submitted over 3,400 raw signatures to Riggs for verification. Second Am. Compl. ¶ 25, ECF 42. Riggs subsequently certified that 3,037 valid signatures were submitted and set a special recall election for November 10, 2020. *Id.* ¶ 26. The election was ultimately successful, and Holladay was removed from office on November 30, 2020. *Id.* ¶ 27.

"Plaintiffs have continued pursuing this lawsuit despite their successful recall effort. They ask this court to find that O.R.S. § 249.875, the statute that requires the signatures to be collected within 90 days to trigger a recall election, is either facially unconstitutional or unconstitutional as applied in light of the public health crisis created by the COVID-19 pandemic and destructive summer wildfires. *See* Second Am. Compl. ¶¶ 51-58, ECF 42. Plaintiffs seek declaratory and injunctive relief, nominal damages of one dollar, and litigation expenses. *Id.*"

1-ER-8–10.

## B. Procedural History and Rulings Presented for Review

At the district court none of Appellants' claims made it past the motion to dismiss stage, so the district court never reached the merits. When the City of Oregon City and the State of Oregon (collectively "the State") moved to dismiss

under Federal Rule of Civil Procedure (FRCP) 12(b)(1) and 12(b)(6), the district court granted the motions (but only in part as to the 12(b)(1) motion). The district court found that Appellants' state law claims were either moot or that the *Pennhurst* doctrine applies, preventing a federal court from providing any form of relief. 1-ER-51. The district court also dismissed Appellants' federal law claims as either moot or failing to state a First Amendment violation. *Id.* Further, the district court denied Appellants' motion for certification to the Oregon Supreme Court. *Id.*

Appellants specifically appeal the following rulings: (1) the district court's finding that the City of Oregon City ("the City") is entitled to state sovereign immunity (1-ER-11–14; 1-ER-19–21; 1-ER-40–41); (2) the district court's denial of Appellant's motion to certify a question of state law to the Oregon Supreme Court (1-ER-39–42); (3) the district court's dismissal of Adam Marl's facial challenges as moot (1-ER-25–27); (4) the district court's finding that Appellants failed to plead the requisite facts to show that "reasonably diligent" petitioners cannot normally qualify for a recall election because of the challenged 90-day statutory signature-gathering limitation (1-ER-49; *see also* 1-ER-47–51); (5) the district court's denial of Appellants' request for leave to amend their complaint with regard to their First Amendment claim-related allegations (1-ER-49; 1-ER-51; 1-ER-4); and (6) the district court's improper weighing of "evidence" at the motion to dismiss stage (1-ER-47–51; 1-ER-4).

6

# VI.  SUMMARY OF ARGUMENT

## A.    State sovereign immunity for municipal officers

The district court found that the City of Oregon City (through Defendant Riggs/Wiley) was entitled to state sovereign immunity, and thus the court was prohibited from granting declaratory relief or a damages award against the City. 1-ER-11–14; 1-ER-19–21; 1-ER-40–41. The district court also relied on the City's supposed state sovereign immunity to justify denying Appellants' motion to certify a question of law to the Oregon Supreme Court. 1-ER-39–42.

The City is not entitled to state sovereign immunity under the Eleventh Amendment. Therefore, the district court had authority to issue declaratory relief and impose damages against the City, to reach Appellants' state law claim, and to certify a question of law to the Oregon Supreme Court. For these reasons, the district court erred in dismissing Appellants' claims.

## B.    Certification of question of state law to the Oregon Supreme Court

In the District of Oregon, motions to certify a question of state law to the Oregon Supreme Court is governed by Local Rule (LR) 83-14(a), which provides that: "For purposes of this rule, the Court is guided by the certification criteria set

forth in *Western Helicopter Services, Inc., v. Rogerson Aircraft Corporation*, 311 Or. 361, 811 P.2d 627 (1991) [("Western Helicopter)"]." The district court failed to apply the *Western Helicopter* criteria, and should have certified Appellants' question of state law to the Oregon Supreme Court. The district court also erred in finding that it lacked authority to certify the question because of Eleventh Amendment sovereign immunity concerns.

## C.  Election law mootness doctrine – same defending party

The district court found that Appellant Adam Marl's facial challenges were not subject to the mootness exception for actions capable of repetition yet evading review. 1-ER-25–27. Specifically, it found that Marl's claims were moot because, although he alleged plans to participate in a recall petition campaign in Oregon in the near future, he did not allege that he will participate in an *Oregon City* recall petition campaign, and therefore Marl will not be subject to enforcement of the 90-day rule from the same defendant. 1-ER-27.

The district court erred in dismissing Marl's claims on this ground because the Ninth Circuit does not require the same future defending government entity in order to trigger the capable of repetition yet evading review exception to mootness.

**D.**    **First Amendment pleading requirements and opportunity to amend complaint**

The district court dismissed Appellants' facial First Amendment challenge because it found that Appellants failed to "plead[] the requisite facts to show that 'reasonably diligent' petitioners cannot 'normally' qualify for a recall election" because of the 90-day signature gathering limitation. 1-ER-49; *see also* 1-ER-47– 51; 1-ER-4. Because Appellants' complaint adequately alleged a First Amendment claim, the district court improperly dismissed Appellants' facial challenge under the First Amendment.

In any event, even assuming the complaint did not allege enough facts to support Appellants' facial First Amendment challenge, the district court erred in failing to grant Appellants leave to amend their complaint with regard to their First Amendment claim-related allegations. 1-ER-49 ("Otherwise said, plaintiffs have not pleaded the requisite facts to show that "reasonably diligent" petitioners cannot 'normally' qualify for a recall election."); 1-ER-4 (dismissing instead of granting leave to amend complaint). The district court should have permitted Appellants to amend the complaint to include additional factual allegations.

**E.**    **Weighing evidence at the motion to dismiss stage**

The district court weighed, and relied on, "evidence" at the motion to dismiss stage. 1-ER-47–51; 1-ER-4. Evaluating and ruling on the strength of the

"evidence" in relation to Appellants' First Amendment claim at the motion to dismiss stage was improper. In any event, resolution of Appellants' federal claims should have been stayed while the Oregon Supreme Court considered Appellants' proposed certified question of state law.

## VII.  ARGUMENT

**A.    The City is not entitled to sovereign immunity under the Eleventh Amendment and *Pennhurst*.**

### 1.    Reviewability and Standard of Review

Reviewability: It was the State that raised the Eleventh Amendment sovereign immunity and *Pennhurst* argument. *See, e.g.,* 3-ER-362. Appellants responded to the State's arguments, among other places, in their Response to State of Oregon's and Defendant's Motions to Dismiss (2-ER-303, 312) and in Plaintiffs' Objections to Magistrate Judge You's Findings and Recommendations (2-ER-72–75).

The district court ruled on this issue by adopting the magistrate judge's findings and recommendations into his opinion and order and his final judgment. 1-ER-5; 1-ER-2.

Standard of Review: A district court's decision to grant or deny a motion to dismiss under FRCP 12(b)(6) for failure to state a claim is reviewed de novo. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

2.      **The district court applied the incorrect Eleventh Amendment state sovereign immunity analysis.**

The City is not entitled to state sovereign immunity under the Eleventh Amendment and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). The district court erred in finding otherwise. *See, e.g.,* 1-ER-40 ("The second question—whether defendant or his predecessor are considered 'state officials' for purposes of *Pennhurst*—is also answered in the affirmative. As discussed earlier in the context of state sovereign immunity, Riggs was acting as a state official when she enforced the 90-day deadline contained in [Or. Rev. Stat.] § 249.875. *Ante* at 6-9; *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1029-31 (9th Cir. 2000)").

The primary problem with the district court's conclusion that *Pennhurst* and the Eleventh Amendment divested it of jurisdiction over Appellants' state law claim is that it applied the wrong analytical framework. While the district court exclusively cited and relied upon *Buffin v. California*, 23 F.4th 951 (9th Cir. 2022), and *Weiner*, 210 F.3d 1025, to supply the applicable analytical framework, 1-ER-12, *Buffin* and *Weiner* are not Eleventh Amendment cases, and they do not even purport to establish the analytical framework governing Eleventh Amendment immunity.

The district court relied on *Buffin* for the proposition that "any officer, be he state or local, is acting as a state office, i.e., a state agent[,] when a state statutory regime comprehensively directs his actions." 1-ER-12 (internal quotation marks

omitted). The *Buffin* court, however, was not articulating the Eleventh Amendment standard; rather, it was articulating an "agency" standard for purposes of liability for attorney fees under 42 U.S.C. § 1988. 23 F.4th at 962. In fact, in *Buffin* the district court's "agency" determination was unchallenged on appeal, *id.*, so the "agency" discussion by the Ninth Circuit in that case, even if it did apply to *Pennhurst* immunity, is *dicta*. Further, it is worth noting that the case relied upon by the court in *Buffin* for the "comprehensively direct" standard is *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990), which itself is *also* not an Eleventh Amendment or *Pennhurst* case. *See Buffin*, 23 F.4th at 962. And the *Buffin* court specifically noted that its "agency" analysis was confined to "this context" (i.e. the 42 U.S.C. § 1988 attorney fees liability context). *Id.* at 963.

*Weiner*, in turn, is not an Eleventh Amendment *Pennhurst* case, either. Rather, *Weiner* is a 42 U.S.C. § 1983 damages case that does not involve, mention, or discuss *Pennhurst* or the Eleventh Amendment at all. *Weiner*, 210 F.3d at 1026; *see generally id.* at 1027-32.

In summary, *Buffin, Echols,* and *Weiner* are inapplicable and otherwise unhelpful to the issue of the City's state sovereign immunity for state law claims because those cases do not even purport to govern Eleventh Amendment *Pennhurst* cases.

The correct analytical framework for whether Eleventh Amendment

*Pennhurst* immunity protects the City in this case is set forth in *Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir. 2021). *Crowe*, unlike *Buffin* and *Weiner*, is an Eleventh Amendment *Pennhurst* sovereign immunity case. 989 F.3d at 730. As the *Crowe* court recognized, there are "different tests for state action and, as we will see, they are quite different from our consideration of factors required for sovereign immunity":

> "Finding that an entity is the 'state' for purposes of the First Amendment or the Due Process and Equal Protection Clauses, however, is not the same as concluding that the entity is the 'state' for purposes of the Eleventh Amendment. *See , e.g. , Monell v. N.Y.C. Dep't of Soc. Servs* ., 436 U.S. 658, 690 n.54, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (explaining there is no 'basis for concluding that the Eleventh Amendment is a bar to municipal liability' in § 1983 suits). We recently discussed the different tests for state action and, as we will see, they are quite different from our consideration of factors required for sovereign immunity. *See Pasadena Republican Club v. W. Just. Ctr.* , 985 F.3d 1161, 1166–67 (9th Cir. 2021) (listing various tests for state action). Accordingly, [*State ex. rel. Frohnmayer v. Oregon State Bar*, 307 Or. 304 (1989)] does not answer the question before us: Whether OSB is an arm of the state entitled to immunity under the Eleventh Amendment.
>
> "To determine whether OSB, which is 'an instrumentality of the ... government of the State of Oregon,' OR. REV. STAT. § 9.010(2), is an arm of the state entitled to immunity, we apply the Mitchell framework. *See Mitchell v. L.A. Cmty. Coll. Dist.* , 861 F.2d 198, 201 (9th Cir. 1988). The Mitchell factors are as follows:
>
>> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity. To determine these factors, the court looks to the

13

way state law treats the entity.

> *Id.* (citation omitted). OSB 'bear[s] the burden of proving the facts that establish its immunity under the Eleventh Amendment.' *ITSI T.V. Prods., Inc. v. Agric. Ass'ns ,* 3 F.3d 1289, 1292 (9th Cir. 1993)."

*Crowe*, 989 F.3d at 730-731.

*Crowe* and *Mitchell* were not addressed by the district court, and that court failed to apply the correct and applicable Eleventh Amendment/*Pennhurst* standard. Accordingly, the City (and State) has failed to carry its burden under *ITSI T.V. Prods., Inc.* to prove that the City is entitled to immunity under the Eleventh Amendment. A brief analysis of the *Mitchell* factors shows that the City is certainly *not* entitled to Eleventh Amendment immunity. As noted above, the *Mitchell* factors are analyzed under Oregon state law.

First, Appellants are aware of no legal authority in Oregon that would impose liability on the State of Oregon for a money judgment entered against the City. Second, the City does not perform central government functions, but rather, municipal government functions. Third, it is axiomatic that the City has the ability to sue and be sued. Fourth, the City takes property in its own name and not the name of the State. And fifth, while the City is a corporate subdivision of the State of Oregon, it is an independent home rule municipal entity. For example, Oregon City's officials are elected by the people of Oregon City (and are not appointed by a state official), it adopts and implements its own laws and regulations, and it has

14

the authority to regulate and manage its own affairs, separate from the State of Oregon.

But ultimately it is not Appellants' burden to establish that the City is *not* protected by Eleventh Amendment *Pennhurst* immunity. Rather, the City (and State) must carry the burden to prove that the City *is* immune, and it has not even attempted to do so under the proper and "quite different" standard set forth in *Crowe* and *Mitchell*. *Crowe*, 989 F.3d at 730. Accordingly, the district court applied the incorrect standard and, as a result, reached the wrong conclusion. This Court should correct that error and find that the City is not immune under the Eleventh Amendment and *Pennhurst*. In other words, the district court properly had jurisdiction over Appellants' state law claim against the City.

**B.    Defendant Marl's claims are not moot simply because he did not allege that he will be involved in a future *Oregon City* recall petition campaign.**

### 1.    Reviewability and Standard of Review

Reviewability: Appellants raised this issue, among other places, in their Response to State of Oregon's and Defendant's Motions to Dismiss (2-ER-293–97) and Plaintiffs' Objections to Magistrate Judge You's Findings and Recommendations (2-ER-75).

The district court ruled on this issue by adopting the magistrate judge's findings and recommendations into his opinion and order and his final judgment. 1-ER-5; 1-ER-2.

Standard of Review: Mootness is a question of law reviewed de novo. *See Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019).

## 2.  Argument

Assuming for the sake of argument that any of Appellants' claims are moot (a point they do not concede -- their request for nominal damages of one dollar prevents mootness), the district court erred in finding that Appellant Marl's facial challenges are not subject to the mootness exception for actions capable of repetition yet evading review. 1-ER-25–27. That court found that Marl's claims are moot because, although he alleged plans to participate in a recall petition campaign in Oregon in the near future, he did not allege that he will participate in an *Oregon City* recall petition campaign, and therefore Marl will not be subject to enforcement of the 90-day rule from the same defendant. 1-ER-27. The district court erred in dismissing Marl's claims on this ground because the Ninth Circuit does not require the same future defending party in order to trigger the capable of repetition yet evading review exception to mootness.

16

The complaint alleges that Marl "intends to participate in future recall petition campaigns in Oregon at the local, county, regional, and state levels, including one in 2022 (and likely 2023)." 2-ER-156, ¶ 11. That participation is alleged to be both personal and professional. *Id.* (discussing Mr. Marl's professional plans, which include political campaign management, political consulting, and related work). Those allegations (including the statement that Marl intends to participate in future *local* recall petition campaigns, which necessarily would involve the Oregon City Recorder), are sufficient to survive a motion to dismiss at the pleading stage. *See Wolfson v. Brammer*, 616 F.3d 1045, 1054-1055 (9th Cir. 2010) (candidate's stated intend to seek office "at some point in the future" sufficient to create reasonable expectation that elections dispute was capable of repetition under mootness exception). And even if the Court finds that those allegations of the complaint are not specific enough, the proper result is not dismissal, but rather direction to Appellants to re-plead with more specific factual allegations regarding their intent to participate in future recall petition campaigns. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("*County of Tulare*").

Although it acknowledged an "absence of a dispositive [Ninth Circuit] case on this specific issue," 1-ER-26, the district court concluded (wrongly) that the "capable of repetition, yet evading review" exception to mootness only applies if

17

the future governmental defendant is part of the same "governmental entity." *Id.* That is not the law in the Ninth Circuit.

The "capable of repetition, yet evading review" exception to mootness applies "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the *same complaining party* will be subject to the same action again." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 736 (2008) (emphasis added). The first element is clearly met where, as here, the challenged action relates to enforcing a 90-day signature gathering requirement. No case can be fully litigated in 90 days. *See Porter v. Jones,* 319 F.3d 483, 490 (9th Cir. 2003) ("Election cases often fall within this exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits."); *see also Joyner v. Mofford,* 706 F.2d 1523, 1527 (9th Cir. 1983) (election cases are likely to escape review because appellate review often cannot be completed during the brief duration of an election). And the second element only requires that the "same complaining party" may be impacted by the future action, not that the same *defending* party be the one to take that future action.

There is no Ninth Circuit case enforcing such a "same defendant" requirement in the elections context. The *Lee v. Schmidt-Wenzel* case is inapposite because it involved only private parties, not public officials in the elections context.

18

766 F.2d 1523, 1390 (9th Cir. 1985) ("When the litigation is between *private* parties, we must consider whether the anticipated future litigation will involve the same defending party as well as the same complaining party.") (emphasis added). The Ninth Circuit has never applied that "same defendant" standard in the public elections context. To the contrary, it routinely finds otherwise moot cases to be capable of repetition even when the future hypothetical defendant elections officer is unknown. *See, e.g., Schaefer v. Townsend*, 215 F.3d 1031, 1032-1033 (9th Cir. 2000) (only Riverside County election officer took challenged action, but action capable of repetition in California *on a statewide level* by other election officers); *Wolfson*, 616 F.3d at 1055 (stated intention to seek elected office at "some point" in the future is sufficient to show issue is capable of repetition, even where plaintiff did not specify when or where they might file for office); *see also Int'l Org. of Masters, Mates & Pilots v. Brown,* 498 U.S. 466, 473 (1991) (holding an election case not moot because "[r]espondent has run for office before and may well do so again"). Therefore, although Marl did allege his intent to participate in *local* recall petition campaigns in the future, he was not required to do so. The allegations regarding his intended future involvement in "county, regional, and state level[]" recall petition campaigns are also sufficient to show that the 90-day signature gathering deadline issue is capable of repetition yet evading review. *Id.*

**C.    The district court should have certified Appellants' question of state law to the Oregon Supreme Court.**

**1.    Reviewability and Standard of Review**

Reviewability: Appellants raised this issue in their Motion to Certify Question of State Law to the Oregon Supreme Court (2-ER-133–151), in their associated Reply (2-ER-111–118), and in their Objections to Magistrate Judge You's finding and recommendations (2-ER-70–71, 84).

The district court ruled on this issue by adopting the magistrate judge's findings and recommendations into his opinion and order and his final judgment. 1-ER-5; 1-ER-2.

Standard of Review: Review of the district court's decision whether to certify is for an abuse of discretion. *See Syngenta Seeds, Inc.*, 842 F.3d at 674. The Ninth Circuit Court of Appeals may also directly certify a legal issue to a state supreme court. *See Childress*, 978 F.3d at 665 (order) ("[W]e may exercise our discretion to certify a question to the state's highest court."), *certified question accepted*, 402 Mont. 426 (2020), *and certified question answered*, 405 Mont. 113 (2021).

**2.    Argument**

Appellants moved the district court, pursuant to Local Rule (LR) 83-14 and Or. Rev. Stat. § 28.200 - 255, to certify the following question of state law to the Oregon Supreme Court:

<u>QUESTION:</u>

"Or. Rev. Stat. § 249.875(1) contains a 90-day limitation for gathering recall petition signatures. Is that statute facially invalid under the Oregon Constitution, and particularly Article II, section 18?"

Certification under Or. Rev. Stat. § 28.200 may be invoked by order of the certifying court on that court's own motion or on the motion of any party. Or. Rev. Stat. § 28.205. A certification order shall set forth the question of law to be answered, and must include a statement of facts relevant to the question being certified and showing fully the nature of the controversy in which the questions arose. Or. Rev. Stat. § 28.210.

**a. Legal standard for certification to the Oregon Supreme Court.**

A district court (and this Court) has discretion in deciding whether to certify a question of law to the Oregon Supreme Court. *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1087 (9th Cir. 2003). In the District of Oregon, that discretion is governed by LR 83-14(a), which provides that: "For purposes of this rule, the Court is guided by the certification criteria set forth in *Western Helicopter Services, Inc., v. Rogerson Aircraft Corporation*, 311 Or. 361, 811 P.2d 627 (1991) [("*Western Helicopter*)"]." There are two sets of certification criteria discussed in *Western Helicopter*: mandatory statutory criteria under Or. Rev. Stat. § 28.200 – 255 and judicially-created discretionary criteria that the Oregon Supreme Court

will apply only if all the mandatory statutory criteria are satisfied. 311 Or. at 364, 366. While an analysis of the mandatory statutory factors is critical to a court's decision whether to certify, and it is the Oregon Supreme Court that is ultimately responsible for analyzing the judicially-created discretionary factors, an examination of the discretionary factors shows that the Oregon Supreme Court is very likely to accept certification in this case.

### i. The mandatory statutory criteria for certification.

There are five mandatory statutory certification criteria discussed in *Western Helicopter*. 311 Or. at 364 – 65. Those five factors are derived from Or. Rev. Stat. § 28.200[1] and are as follows:

(1) The certification must come from one of the courts designated in the statute (which includes both Federal District Courts and Federal Courts of Appeals);

(2) The question must be one of law;

---

[1]     Or. Rev. Stat. § 28.200 provides as follows:

"The [Oregon] Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, a panel of the Bankruptcy Appellate Panel Service or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the [Oregon] Supreme Court and the intermediate appellate court of this state."

(3) The applicable law must be Oregon law;

(4) The question must be one that "may be determinative of the cause," which means that the Oregon Supreme Court's answer to the question "must, in one or more of the forms it could take, have the potential to determine at least one claim in the case"; and

(5) It must appear to the certifying court that there is no controlling precedent in the decisions of the Oregon Supreme Court or the Oregon Court of Appeals.

*Western Helicopter*, 311 Or. at 364 – 65. All five factors must be met for the

Oregon Supreme Court to accept a certified question. *Id.* at 366.

### ii. The discretionary criteria for certification.

If the five mandatory statutory certification factors are met, then a Court

may certify a question to the Oregon Supreme Court. At that point, the Oregon

Supreme Court will consider the following five *discretionary* factors in deciding

whether to accept certification:

1. <u>Whether there is controlling Oregon precedent.</u>[2] "One of the most important factors—perhaps the most important one—in deciding whether we will accept certification will be [whether] there already is controlling Oregon precedent for the question certified." *Western Helicopter*, 311 Or. at 366. If controlling Oregon precedent exists for the question certified, "that factor will argue heavily against accepting certification." *Id.*

---

[2] This first discretionary factor is similar to the fifth mandatory statutory factor, in that both factors relate to whether there is binding Oregon precedent regarding the certified question. The difference between the factors is that the first discretionary factor is determined by the Oregon Supreme Court's "independent assessment" of whether binding precedent exists, while the similar fifth mandatory factor is satisfied by the *certifying court's* assessment. *Western Helicopter*, 311 Or. at 366.

2. *Pullman* abstention favors certification. "Except in unusual circumstances (examples of which do not readily come to mind), we normally will accept certification in *Pullman*-type abstention cases." *Western Helicopter*, 311 Or. at 368.

3. Importance of question. "We therefore are called on to decide whether we wish to have a decision of [the Oregon Supreme Court] on the subject of the certified question or whether, on the other hand, the issue is of such limited legal consequence that it is inappropriate to take the time to produce an opinion of this court concerning it.*" Id.* at 369.

4. Issue must be contested. "Yet another factor is whether the questions certified appear truly to be contested." *Id.* at 370. The Oregon Supreme Court will "accept only issues of law that truly are contested between the parties." *Id.*

5. Procedural posture of case. The Oregon Supreme Court prefers certified questions to present "well defined" and "focused" issues, which necessarily means that the district court proceedings have progressed to the point where those issues are clear. *Id.* "[A] motion to dismiss, for example … could raise issues appropriate for certification." *Id.*

## b. The *Western Helicopter* factors favor certification.

### i. Mandatory statutory factors.

#### (1) Designated court.

The district court and this Court are both designated courts pursuant to Or.

Rev. Stat. § 28.200.

This mandatory factor is satisfied and favors certification.

24

### (2)  Question of law.

The certified question must be a question of law. *Western Helicopter*, 311 Or. at 364; Or. Rev. Stat. §§ 28.200, 28.210. Certification is not appropriate where disputed facts render the legal dispute unclear. *Western Helicopter*, 311 Or. at 364 – 65.

Here, the proposed certified question involves a pure legal dispute. The question is whether a statute, Or. Rev. Stat. § 249.875(1), is facially invalid under the Oregon Constitution, in particular the provisions governing the recall right in Article II, section 18. Because the proposed certified question relates solely to Appellants' facial challenge under the Oregon Constitution, it is difficult to imagine any disputed facts that even *could* render the legal dispute unclear. In other words, if the question is certified to the Oregon Supreme Court and that court accepts it, the certified question can be answered by looking exclusively to the text and legislative history of the Oregon Constitution and the statute, without regard to the facts of this case.

Because there are no disputed facts pertaining to the legal issue contained in the proposed certified question, this factor is satisfied and favors certification.

### (3) Question of *Oregon* law.

A certified question must concern Oregon law and not the law of another jurisdiction. *Western Helicopter*, 311 Or. at 365. Here, the proposed certified

question involves the intersection of an Oregon statute (Or. Rev. Stat. § 249.875(1)) and the Oregon Constitution, and not the law of any other jurisdiction.

Because the only law at issue is Oregon law, this mandatory factor is satisfied and favors certification.

### (4) Potential to determine at least one claim in the case.

The answer to the certified question must have the potential to determine at least one claim in the case. *Western Helicopter*, 311 Or. at 365. Here, the certified question relates to Plaintiffs' facial challenge to Or. Rev. Stat. § 249.875(1) under the first claim for relief ("Violations of Or. Const., Art. II, § 18 – Undue Burden on Recall Right," 2-ER-170). The Oregon Supreme Court's answer to the certified question therefore has not only the *potential* to determine that claim, but the answer undoubtedly *will* determine the claim. Either the Oregon Supreme Court will decide that the statute is inconsistent with the Oregon Constitution, in which case Appellants will prevail on their facial challenge, or the Oregon Supreme Court will determine that the statute is *not* inconsistent with the Oregon Constitution, in which case Appellants will fail on their facial challenge. In either event, the facial challenge claim will be determined by an answer of the Oregon Supreme Court.

Because the answer to the certified question will resolve one of the claims in this case, this mandatory factor is satisfied and favors certification.

**(5) No controlling Oregon precedent.**

The final mandatory statutory factor requires the certifying court to engage in an analysis of whether there is any controlling precedent in the Oregon Court of Appeals or Oregon Supreme Court. *Western Helicopter*, 311 Or. at 365. If there is controlling precedent in either appellate court, then certification is not appropriate. *Id.*

Here, there is no controlling precedent in Oregon regarding the proposed certified question, which asks if the 90-day recall petition signature gathering deadline under Or. Rev. Stat. § 249.875(1) is invalid under the Oregon Constitution.[3] As explained below, while there is an Oregon Supreme Court case from 1914 that strongly *suggests* that the statute's 90-day limitation on signature gathering is invalid under the Oregon Constitution, the question has never been squarely decided by an Oregon appellate court. Indeed, at the time that case was

---

[3]    In their motions to dismiss, both the State and the City expressly agreed that there is no controlling precedent in Oregon on this question. 3-ER-355 (State's motion to dismiss, asserting that "No Oregon court has determined whether the 90-day deadline violates the Oregon Constitution, and thus Plaintiffs' challenge presents novel and uncertain questions of state law")(internal brackets and quotation marks omitted); 2-ER-326 (City's motion to dismiss, joining in and incorporating by reference the State's motion).

decided, *State ex rel. Clark v. Harris*, 74 Or. 573 (1914) ("*Clark*"), there was no statutory time limitation for recall petition signature gathering.[4]

In *Clark*, decided six years after the recall power was added to the Oregon Constitution in 1908, the Oregon Supreme Court was called upon to decide whether the recall power of Article II, section 18 is self-executing, or whether it instead requires implementing legislation. *Id.* at 575 – 76. In finding the Constitutional recall power to be entirely self-executing, the Court repeatedly provided clear guidance regarding what power the Oregon Legislature has, and does not have, to regulate the recall power (emphasis in original):

"[Article II, section 18] subjects every state, district, county, and municipal officer to what has been designated as the 'Imperial Recall.' It provides a special remedy to oust from public office a corrupt, incompetent, unfaithful, or unpopular public servant. [Article II, section 18(8) provides:]

'Such additional legislation *as may aid the operation of this section* shall be provided by the legislative assembly, including provision for payment by the public treasury of the reasonable special election campaign expenses of such officer.'

This clause requires the legislative assembly to pass such legislation 'as may *aid* the operation' of said section. This does not mean legislation to put said section in operation, but such as will *aid* its operation. It seems to imply that the section will be in operation before such legislation shall be enacted. 'To aid' signifies 'to support, help, or assist.'

---

[4]     No legislation related to the recall power was passed by the Oregon Legislature until 25 years after Article II, section 18 was adopted by voters into the Oregon Constitution. Or. Laws 1933, ch. 381, § 2.

"This section does not confer *power* upon the legislative assembly to provide for the recalling of officers. It is not a mere declaration of principles to be made operative by the legislative assembly. It provides that *'every public officer, is subject as herein provided, to recall.'* Every officer is made, by this section, subject to recall as provided therein and not as the lawmaking department may provide. [...]

"[Article II, section 18] sets forth a complete modus operandi for the recall. Nothing whatever is omitted that is necessary to effect the recall. Its provisions are absolute, not conditional. Its terms indicate an intention that it shall be operative as soon as it shall be adopted by the people. *There is nothing to be done by the Legislature to put it in operation.* It is clear from the terms of this section that its framers and the electors who adopted it did not intend that it should be *in abeyance* until the lawmaking power should pass some act in its aid. If they had intended to confer *power* on the Legislature to provide for a recall of public officers, they could have done so in a few words, and it would not have been necessary to use 500 words in conferring this power. It is evident from the wording of this section that its framers and the electors who adopted it desired to make it effective immediately. To make it dependent on the action of the Legislature would have been to make it subject to be defeated by the inaction of an unfriendly or negligent Legislature. [...]

"[Subsection 18(8),] which provides that such additional legislation as may aid in the operation of this section shall be provided by the legislative assembly, including a provision for payment, by the public treasury, of the reasonable special election campaign expenses of such an officer, is a direction to the Legislature to pass such act as may aid in the operation of said section, but the right to have an officer recalled, in accordance with the provisions of such sections, is not made *dependent* on the passage of such an act. It is the duty of the legislative assembly to pass such an act, but the right to recall an officer cannot be suspended or defeated by the failure of the Legislature to do its duty in the premises. There is nothing in said section indicating an intention that the right of recall should be *dependent* upon the action or will of the Legislature. The people adopted this section to enable them to have a remedy against corrupt, inefficient, unfaithful or unpopular public officers. The section provides a complete code for a recall of officers, and, according to the obvious meaning of the language used, the right was to be effective *as soon as said section took effect."*

29

"It is hardly necessary for us to say that we have nothing to do with the *wisdom* of the provision for the recall. Obviously, it can be abused."

*Clark*, 74 Or. at 579-85 (emphasis in original).

The above-quoted portions of *Clark* make it clear that the recall right springs, fully formed, from the text of the Oregon Constitution, without the need for implementing legislation. And precisely because Article II, section 18's "provisions are absolute, not conditional," *Clark*, 74 Or. at 581, the Oregon Legislature has no power to curtail the recall right by imposing a 90-day signature gathering limitation when the Oregon Constitution contains no such limitation and does not authorize the Oregon Legislature to impose such a limitation.

While *Clark* is highly instructive in answering the proposed certified question regarding the 90-day signature gathering limitation, it is not "controlling precedent" in this case. Rather, the helpful language in *Clark* is *dicta* as to the certified question at issue here. In *Clark* the issue was whether the recall right required implementing legislation or not. Here, by contrast, the critical issue is whether the Oregon Legislature has the *authority* to impose a *restriction* on the recall right that is not specifically authorized by the Oregon Constitution. To use the words of Article II, section 18: does the statutory 90-day limitation "aid the operation of" that section? That question has never been asked of, or answered by, an Oregon appellate court.

30

Because there is no controlling Oregon precedent regarding the proposed certified question, this mandatory statutory factor is satisfied and favors certification.

### ii.    Discretionary *Western Helicopter* factors.

While this Court is not bound to apply the discretionary *Western Helicopter* factors, analysis of those five additional factors can be helpful in determining whether the Oregon Supreme Court is likely to accept certification of a particular question of law. That information, in turn, can inform *this* Court's decision whether to exercise its discretion to certify a question to the Oregon Supreme Court. As examined below, application of the discretionary factors to the proposed certified question in this case suggests that the Oregon Supreme Court is likely to accept certification.

### (1)    No controlling Oregon precedent.[5]

As discussed in the previous section with regard to the fifth mandatory certification criterion, the parties are in agreement that there is no controlling Oregon precedent on the issue of whether the statutory 90-day recall petition signature gathering limitation is valid under Article II, section 18 of the Oregon Constitution. While the Oregon Supreme Court must make an "independent

---

[5]    As mentioned above in footnote 2, the first discretionary factor is identical to the fifth mandatory statutory factor, except that the Oregon Supreme Court, and not a federal district court or court of appeals, is charged with evaluating the first discretionary factor. *See Western Helicopter*, 311 Or. at 366.

assessment" under this factor, *Western Helicopter*, 311 Or. at 366, there is no reason to believe it will reach a contrary conclusion.

The first discretionary factor, noted by the Oregon Supreme Court to be "perhaps the most important one," favors certification. *Id.*

### (2) *Pullman* abstention does not apply.

In *Western Helicopter* the Oregon Supreme Court noted that claims involving abstention under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman*") are appropriate for certification. 311 Or. at 367–68. However, as explained in Appellants' memorandum regarding *Pullman* abstention, 2-ER-87–95, and in Magistrate Judge You's findings and recommendations, 1-ER-29–38, *Pullman* abstention is inappropriate in First Amendment cases such as this one.

### (3) The importance of the question merits certification.

The parties appear to agree that questions about the people's recall right are very important. As the State asserted in its motion to dismiss: "The recall goes to the heart of Oregon's self-government: when and how it elects the officials who govern the state. There is no more sensitive area of state policy." 3-ER-354–355 (internal citation omitted); *see also* 2-ER-326 (City's motion to dismiss – joining in and incorporating by reference the State's motion). Indeed, the proposed

certified question goes to a core, yet unresolved issue relating to Oregon recalls: to what extent does the Oregon Legislature have power to curb the self-executing recall right set forth in the Article II, section 18 of the Oregon Constitution? This issue necessarily involves "an important constitutional right applying to all citizens" which relates to "the preservation of the democratic process." *Armatta v. Kitzhaber*, 327 Or. 250, 287, 289 (1998) (discussing the types of important public interest legal issues that justify imposition of an equitable award of attorney fees in favor of a prevailing plaintiff). It is therefore no wonder that all parties agree that questions relating to the extent of the recall right are important.

Another reason the proposed certified question is important enough to warrant acceptance by the Oregon Supreme Court is the principle of checks and balances. That is, in imposing the 90-day signature gathering limitation of Or. Rev. Stat. § 249.875(1), the members of the Oregon Legislature were, in part, protecting *themselves* from facing recall elections. It should go without saying that a recall petitioner will have a harder time gathering the number of signatures sufficient to trigger a recall election when that petitioner has only 90 days to do so instead of, say, a year or more. This results, as it must, in fewer successful recall petitions, which leads to fewer recall elections, which leads to fewer recalled politicians. The 90-day limitation, adopted by the Oregon Legislature, therefore directly protects the members of the Oregon Legislature from facing recall elections. That has at

33

least the appearance of self-dealing, and the issue should be addressed by a co-equal branch of government that has the power to declare the extent of the people's constitutional recall right: the Oregon Supreme Court.

Finally (though without limitation), not only is the proposed certified question itself important, but that importance is underscored by the opportunity afforded by the *timing* and *procedural posture* of this litigation. Certification in this case, at this time, will afford the Oregon Supreme Court a non-emergency opportunity to render a decision regarding the bounds of the Oregon Legislature's power to curtail the recall right. And it can do so without being rushed. That is an unusual situation for the Oregon Supreme Court in election-related matters, especially for cases like this one involving tight statutory deadlines (i.e. the 90-day signature gathering limitation). More typically, such cases are decided on an expedited or emergency basis, which does not afford much time for the parties to fully and adequately brief the issues, or for the court to fully assimilate that information, hold oral argument, and issue an opinion in due course. In other words, cases such as these are often decided on a rush basis. Here, however, the opportunity is afforded for a more extended and thorough process via certification to the Oregon Supreme Court. Because Appellants have made the unusual decision to pursue their case despite having successfully gathered enough recall petition signatures to trigger a recall election, there is no need for a rushed decision via

mandamus or an expedited appeal; Appellants' recall has already succeeded, so there is no emergency need for a quick decision. Such a relatively relaxed schedule will likely lead to better and more thorough briefing, and otherwise to a more thorough exploration and treatment of the issues before the Oregon Supreme Court. That is a real and important benefit to the people of Oregon. On the other hand, if this Court does not order certification, then the proposed certified question will likely go unanswered by the Oregon Supreme Court for years, or until a failed or faltering recall petitioner brings an expedited or emergency case before the Oregon Supreme Court challenging the statutory 90-day signature gathering limitation. In such a case the Oregon Supreme Court likely will feel rushed, and will not have an opportunity to take its preferred amount of time in deciding the question. Far better to present the question to the Oregon Supreme Court when it has the luxury of time. That luxury is available via certification.

The third discretionary factor favors certification.

### (4)    The issue is contested.

The Oregon Supreme Court will "accept only issues of law that truly are contested between the parties." *Western Helicopter*, 311 Or. at 370. That discretionary factor is satisfied in this case because the State and the City strongly disagree with Appellants' position on the merits. *See, e.g.*, 3-ER-364–366 (State's

motion to dismiss, arguing the merits of Appellants' facial claim under the Oregon Constitution); 2-ER-326 (adopting State's motion).

The fourth discretionary factor favors certification.

### (5)    The issue is well defined, focused, and clear.

The final discretionary factor the Oregon Supreme Court will analyze under *Western Helicopter* relates to the procedural posture of the case. That is, as previously noted, the Oregon Supreme Court prefers certified questions to present "well defined" and "focused" issues, which necessarily means that the district court proceedings have progressed to the point where those issues are clear. *Western Helicopter*, 311 Or. at 370. "[A] motion to dismiss, for example … could raise issues appropriate for certification." *Id.* Such is the case here.

There will be no better procedural opportunity to certify the proposed question to the Oregon Supreme Court; now is the appropriate time. The legal issue proposed for certification is well-defined and focused. The legal issue is simply: does the Oregon Legislature have the power to curtail the recall right by imposing a 90-day recall petition signature gathering limitation? That legal issue is not susceptible to further refinement or development, other than via full briefing on the merits, which can appropriately take place before the Oregon Supreme Court during its consideration of the certified question.

The fifth discretionary factor favors certification.

In light of the above analysis, the district court abused its discretion in failing to certify Appellant's question of state law to the Oregon Supreme Court. This Court should correct that error by either directly certifying the question itself, or remanding to the district court with instructions to certify the question to the Oregon Supreme Court.

**D.    Appellants' Second Amended Complaint properly pleads a First Amendment claim. And if it doesn't, then amendment, rather than dismissal, is appropriate.**

### 1.    Reviewability and Standard of Review

Reviewability: Appellants raised this issue, among other places, in their Response to State of Oregon's and Defendant's Motions to Dismiss (2-ER-306–311) and their Objections to Magistrate Judge You's Findings and Recommendations (2-ER-76–81).

The district court ruled on this issue by adopting the magistrate judge's findings and recommendations into his opinion and order and his final judgment. 1-ER-5; 1-ER-2. The district court also specifically addressed this issue in its opinion and order. 1-ER-3–4.

Standard of Review: This Court reviews de novo dismissals based on the failure to state a claim pursuant to FRCP 12(b)(6). *See Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021). Further, "if a district court denies

leave to amend based on the futility of the amendment or inability to allege a valid cause of action, [the Court] review[s] the decision de novo." *Kroessler v. CVS Health Corp*., 977 F.3d 803, 807 (9th Cir. 2020); *see also Wochos v. Tesla, Inc*., 985 F.3d 1180, 1197 (9th Cir. 2021).

### 2. The Second Amended Complaint properly pleads a First Amendment claim

The district court correctly determined that the framework articulated in *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), governs Appellants' First Amendment claim in this case. 1-ER-47 ("*Angle* remains the recognized framework that this court, which is bound by Ninth Circuit caselaw, must follow absent instruction to the contrary."). However, the district court's analysis of whether Appellants' complaint sufficiently alleges a plausible First Amendment claim under *Angle* is flawed. 1-ER-49 ("[P]laintiffs have not pleaded the requisite facts to show that "reasonably diligent" petitioners cannot 'normally' qualify for a recall election.").

Under *Angle*, "we assume that ballot access restrictions place a severe burden on core political speech, and trigger strict scrutiny, when they significantly inhibit the ability of initiative proponents to place initiatives on the ballot." 673 F.3d at 1133. The *Angle* court likened this standard to the one used to evaluate restrictions on a potential candidate's access to the ballot: the "burden on plaintiffs'

rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so." *Id.* (quoting *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008)). The *Angle* court also identified two scenarios "in which restrictions . . . can severely burden core political speech": (1) "regulations can restrict one-on-one communication between petition circulators and voters," and (2) "regulations can make it less likely that proponents will be able to garner the signatures necessary to place an initiative on the ballot, thus limiting their ability to make the matter the focus of statewide discussion." *Id*. at 1132 (citations and quotation marks omitted).

Appellants' Second Amended Complaint sufficiently alleges a First Amendment claim under *Angle*. While citation to the applicable cause of action alone is insufficient to satisfy Fed. R. Civ. P. 8(a)(2), the complaint cites *Angle* as providing the governing standard, signaling to the City and the State the nature of the requested relief and the applicable framework. Complaint, 2-ER-170, ¶ 50 (alleging "If a severe burden on these [First Amendment] rights is established, then strict scrutiny applies. *See, e.g.*, *Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966); *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012)."). And while the Complaint in its current form does not spell out each component of the *Angle* standard (such as the "reasonably diligent" component), Appellants are not

required to recite each element of a cause of action in their complaint or otherwise to use "magic language." Rather, the important point for pleading sufficiency purposes is that Appellants' existing allegations are clearly enough to put the City and the State on notice of the factual basis of their First Amendment claim. This satisfies the well-known pleading standard under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For example, the complaint alleges facts suggesting that challenged 90-day signature gathering rule constitutes a severe burden on even reasonably diligent (or, in Appellants' case, *exceptionally* diligent) petitioners:

- 2-ER-161, ¶ 28: "**Plaintiffs' entire recall petition campaign effort and signature gathering strategy was shaped by the pressure and demands of the 90-day signature gathering deadline imposed by Ms. Riggs pursuant to ORS 249.875(1). As explained below, that effort and strategy was more expensive, more difficult, and more likely to fail than it would have been had it not been burdened by a 90-day signature gathering deadline**." (Emphasis added).

- 2-ER-161, ¶ 29: "The 90-day signature gathering deadline made plaintiffs' recall petition campaign more *expensive* than it would have been without that deadline. For example, to gather enough signatures before the 90-day deadline expired, plaintiffs hired a print and mail house, Gateway Communications, Inc. ("Gateway"), to print and mail recall petition signature sheets (and associated documents) directly to 11,210 voting households in Oregon City. That mailer packet included a cover letter, instructions, a signature sheet, and a return envelope. *See* Ex. 6 (mailer packet). Gateway charged plaintiffs $8,000 for this service, Ex. 7 (Gateway invoice), which plaintiffs paid. That expense was, by far, the largest cost incurred by plaintiffs during the recall campaign and raising funds for that expense on short notice was a hardship to plaintiffs. Also, to facilitate the return of completed signature sheets from direct mail respondents, plaintiffs paid hundreds

40

of dollars to the United States Postal Service (USPS) to set up and operate a business reply mail (BRM) account." (Emphasis in original).

- 2-ER-162, ¶ 30: "**But-for the 90-day deadline imposed by Ms. Riggs, plaintiffs would not have sent the direct mailer, nor hired Gateway, nor set up a BRM account. Indeed, but-for the 90-day deadline, the mailer and BRM account would not have been necessary**, and plaintiffs would have relied more heavily on in-person signature gathering to obtain the needed number of recall petition signatures. Because plaintiffs did not hire paid signature gatherers for their campaign, in-person signature gathering was a zero-cost approach for plaintiffs." (Emphases added).

- 2-ER-163, ¶ 33: "**The recall campaign was an all-volunteer effort, and yet it was well-organized and efficient.** Before the campaign launched, the following volunteer leadership positions were filled: Campaign Manager, Deputy Campaign Manager, Office Manager/Scheduler, Volunteer Coordinator, Assistant Volunteer Coordinator, Field Director, Signature-Gathering Educator, Signature-Gathering Coordinator, Phone Bank Lead, Constituency Organizer, Communications/Press Secretary, Social Media Coordinator, Finance/Fundraising Director, Technology Director/Website Manager, and Legal Counsel. Not long after the campaign launched, more than 100 volunteers were engaged in the recall effort. Members of the leadership team communicated and strategized daily and held weekly planning meetings. Collectively, campaign volunteers spent many hundreds of hours organizing, planning, and working to obtain petition signatures." (Emphasis added).

- 2-ER-164, ¶ 34: "30 days after receiving approval to circulate the signature sheets, the campaign had obtained approximately 1,340 raw signatures (43% of the campaign's goal of 3,100 raw signatures5). By day 45, that total had risen to approximately 1,613 raw signatures (52% of the campaign's goal). By day 60, the total had risen to approximately 1,961 raw signatures (63% of the campaign's goal). At that rate, the campaign was not on track to obtain enough raw signatures by the 90-day deadline. Indeed, as time went on, it was getting more and more difficult for volunteers to obtain new signatures. It was clear to the campaign leadership that, **despite the dedication, diligence, and persistence of its many volunteers, a**

**new, expensive approach would be needed in order to obtain a sufficient number of raw signatures by the September 21st deadline**. That approach was the $8,000 direct mailer through Gateway." (Emphasis added).

- 2-ER-165, ¶ 37: "**But-for the expensive direct mailer tactic, the campaign would not have gathered sufficient signatures within 90 days** (i.e. before the September 21st deadline set by Ms. Riggs). However, but-for the 90-day deadline, the campaign would *not* have utilized the direct mailer tactic, and therefore would *not* have incurred the expense associated with the direct mailer." (Emphasis added).

- 2-ER-165, ¶ 38: "The 90-day signature gathering deadline made plaintiffs' recall petition campaign more ***difficult*** for the same reasons that it made signature gathering more expensive (as described above). Further, it is a truism that it is more difficult to gather a certain number of signatures within 90 days than it is to gather that same number of signatures *without* a 90-day deadline. **For example, if the campaign had had more than 90 days to gather signatures, it would not have dominated the campaign volunteers' lives (including Gonzales' and Marl's lives) to the same extent and intensity. The 90-day deadline required many campaign volunteers to dedicate most, if not all, of their free time over a 90-day period to campaign efforts. That was a hardship to the volunteers and to the campaign because it required volunteers to ignore other important matters, both personal and professional, to their detriment. The level of focus, intensity, and time required of the volunteers by the 90-day limit therefore made the campaign more difficult than it otherwise would have been without the 90-day limit**." (First emphasis in original; second emphasis added).

- 2-ER-166, ¶ 39: "The 90-day signature gathering deadline made plaintiffs' recall petition campaign ***more likely to fail*** for the same reasons that it made signature gathering more expensive and more difficult (as described above). Further, it is obvious that a time limitation acts to decrease the likelihood that an effort will be successful; by definition, a time limitation means that an effort will fail if it does not meet the time limitation. **Further, while this recall campaign ultimately succeeded in gathering a sufficient number of signatures to put the issue on the ballot, it is well-established**

**that most recall campaigns fail to obtain the requisite number of petition signatures. This is, in large (and obvious) part, due to lack of adequate time to gather signatures.** Therefore, the 90-day limitation made plaintiffs' recall petition campaign more likely to fail than if the 90-day limitation was not imposed." (First emphasis in original; second emphasis added).

While all of the above factual allegations are relevant (and collectively sufficient at the pleading stage) to support a First Amendment claim under *Angle*, perhaps the final quoted allegation most closely addresses the district court's main criticism that "plaintiffs have not pleaded the requisite facts to show that 'reasonably diligent' petitioners cannot 'normally' qualify for a recall election." 1-ER-49. That is, in direct contradiction of the district court's criticism, the above-quoted paragraph 39 of Appellants' complaint alleges that "it is well-established that most recall campaigns fail to obtain the requisite number of petition signatures […] in large (and obvious) part [] due to lack of adequate time to gather signatures." 2-ER-165. While this factual allegation does not invoke the magic words "reasonably diligent" or "cannot normally qualify for the ballot," such hyper-specific code-pleading is not required. What matters is the factual allegations, and Appellants' current complaint sufficiently alleges enough supporting facts to survive a motion to dismiss. The allegations being sufficient for the pleading stage, Appellants' case should be allowed to proceed so that they can *prove* those allegations.

3.   **If the Court finds Appellants' First Amendment claim-related factual allegations to be insufficient, the Court should allow Appellants to amend their complaint to include additional supporting factual allegations.**

In the Ninth Circuit, dismissal without leave to amend is improper unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities. *County of Tulare*, 666 F.3d at 636. Here, such amendment would not be futile. Appellants can include additional factual allegations regarding why and how the 90-day signature gathering limitation placed a severe burden on Appellants' First Amendment rights. This can be accomplished by further explaining that most recall petition efforts fail to qualify for the ballot despite reasonable diligence by the petitioners, and that this failure is caused primarily by the 90-day signature gathering limitation. Additional supporting allegations can also be included.

Neither, under *County of Tulare*, have Appellants "failed to cure the complaint's deficiencies despite repeated opportunities." 666 F.3d at 636. While Appellants' have already amended their complaint two times, the First Amended Complaint was filed as-of-right on March 11, 2021, primarily as a "house-keeping" amendment. That is, the First Amended Complaint was filed not because any party had challenged the sufficiency of the original complaint (the State's and City's motions to dismiss were not filed until two weeks later, on March 25, 2021, 3-ER-

44

332–369 and 2-ER-325–330), but rather primarily to update the background facts and verb tense throughout the complaint to reflect that Appellants had submitted sufficient recall petition signatures and had successfully recalled Dan Holladay at the fall 2020 special election. Because the original complaint was filed *before* Appellants had qualified for the ballot, the original complaint did not contain any of those allegations.

The only other amendment was the Second Amended Complaint which, in contrast to the First Amended Complaint, was filed because Magistrate Judge You specifically directed it in the order dated October 20, 2021. 2-ER-240–243. In that order, Judge You expressed concerns about the injury-in-fact allegations of Appellants' First Amended Complaint, and directed them "to submit supplemental briefing on how they would amend [the First Amended Complaint] to allege cognizable injuries-in-fact." 2-ER-241. Following Judge You's order, Appellants submitted the requested briefing along with a proposed Second Amended Complaint with additional allegations related to injury-in-fact. 2-ER-225–239; 2-ER-152–174. The district court subsequently ordered the filing of the Second Amended Complaint. 2-ER-205.

Despite having amended the original complaint twice, Appellants have not yet been afforded the invitation or opportunity to supplement the complaint with additional factual allegations supporting their First Amendment claim. The First

Amended Complaint, as discussed above, was undertaken voluntarily by

Appellants for primarily housekeeping reasons, before any party mounted a

challenge to the complaint. And the Second Amended Complaint was filed under

the specific direction of Judge You, and with the limited purpose of supplementing

the injury-in-fact allegations. While Appellants requested conditional leave to

amend their complaint "[i]f the Court finds that any of the allegations of the

complaint are currently insufficient," 2-ER-320, the district court denied that

request. 1-ER-3–5. That denial was an abuse of discretion. *See County of Tulare,*

666 F.3d at 636.

The district court found that granting leave to amend the complaint would be

futile:

> "Here, amendment would be futile for several reasons. Plaintiffs'
> counsel's statement on the ease of obtaining signatures in a setting not
> affected by COVID-19 clearly contradicts Plaintiffs' First
> Amendment claim. Further, Plaintiffs' proposed amendment to
> include data on the fact that most recall petitions fail would not
> establish the link between failed petitions and the alleged severe
> burden of the 90-day time restriction. More importantly, because
> sovereign immunity and mootness apply, any amendment to the
> complaint to cure its deficiencies would be futile. Therefore, dismissal
> is appropriate."

1-ER-4 (opinion and order). These findings are erroneous. First, "counsel's

statement on the ease of obtaining signatures" is a reference to a pre-

litigation letter submitted by the undersigned attorney to Defendant Riggs.

*Id.*; 2-ER-179–194. That statement in that letter was merely intended to

convey an attitude of confidence in the strength of public support for this particular recall campaign, and was clearly not intended to suggest that the 90-day signature gathering limitation was somehow valid. In other words, the district court took that statement out of context, and it is not a judicial admission. That letter, and the impropriety of relying on it as "evidence" at the motion to dismiss stage, is discussed more fully in the next section.

Second, the district court engaged in pure speculation when it concluded that "Plaintiffs' proposed amendment to include data on the fact that most recall petitions fail would not establish the link between failed petitions and the alleged severe burden of the 90-day time restriction." 1-ER-4. The district court cannot know what Appellants' evidence will eventually show, and it was improper for the district court to prevent Appellants from even attempting to make that showing. Indeed, the district court's finding ignores that Appellants have *already* made an allegation connecting : "Further, while this recall campaign ultimately succeeded in gathering a sufficient number of signatures to put the issue on the ballot, it is well-established that most recall campaigns fail to obtain the requisite number of petition signatures. *This is, in large (and obvious) part, due to lack of adequate time to gather signatures*." Second Amended Compl (2-ER-166, ¶ 39)(emphasis added).

Third, the district court's statement that "because sovereign immunity and mootness apply, any amendment to the complaint to cure its deficiencies would be futile," 1-ER-4, is erroneous. As explained *supra,* Eleventh Amendment sovereign immunity does not protect the City here. And further, the district court found that at least Appellant Gonzales' First Amendment claim is not moot, or is at least capable of repetition yet evading review. And as argued above, the same is true of Appellant Marl. Therefore, neither sovereign immunity nor mootness would make amendment futile.

As explained above, if this Court agrees with the district court that there are pleading deficiencies in relation to Appellants' facial challenge under the First Amendment, then the proper remedy is not dismissal of the case, but rather an opportunity for Appellants to file an amended complaint addressing those deficiencies.

### E. The Findings and Recommendations improperly reach, and rule on, the merits of Appellants' facial challenge under the First Amendment.

#### 1. Reviewability and Standard of Review

<u>Reviewability</u>: Appellants raised this issue, among other places, in their' Objections to Magistrate Judge You's Findings and Recommendations (2-ER-82–84).

The district court ruled on this issue by adopting the magistrate judge's findings and recommendations into his opinion and order and his final judgment. 1-ER-5; 1-ER-2. The district court also weighed and relied upon "evidence" in his opinion and order. 1-ER-4.

Standard of Review: On appeal from a successful motion to dismiss, review is generally limited to the contents of the complaint. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019). However, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

## 2. Argument

While the district court reached the wrong conclusion, it was nonetheless appropriate for that court to evaluate Appellants' complaint for the sufficiency of their First Amendment claim-related allegations. That is, after all, the purpose of testing a complaint via a motion to dismiss. It was improper, however, for the district court to go beyond the scope of review applicable to the motion to dismiss context and evaluate whether the available "evidence" demonstrates the presence, or lack thereof, of a "severe burden" on First Amendment rights by virtue of the 90-day signature gathering limitation. The same is true regarding whether the

burden caused by the 90-day limitation is justified by a sufficient state interest. That weighted evidentiary evaluation should not come until, at the earliest, the summary judgment stage, and this case has not yet progressed that far.

As an example of the improper weighing of evidence at the motion to dismiss stage, the district court interpreted a statement made in a letter attached to the complaint. In that letter, Appellants' counsel wrote to Defendant Riggs pre-litigation and stated that "there is little doubt that, during non-COVID times, the campaign could easily obtain well over [the sufficient number of signatures] during the statutory 90-day signature gathering period." 2-ER-179–194. But the district court took that statement out of context. That letter, dated August 14, 2020, was attached to the complaint to provide context for the dispute, and was not central in any way to Appellants' claims. 2-ER-160, ¶ 22. In the letter Appellants' counsel requested that Riggs evaluate the 90-day signature gathering deadline for unconstitutionality under both the Oregon Constitution and the First Amendment. Riggs, of course, declined the invitation. 2-ER-160, ¶ 23. The full statement from the letter is as follows: "*Based on the levels of public support the campaign is seeing,* there is little doubt that, during non-COVID-19 times, the campaign could easily obtain well over 2,400 valid signatures during the statutory 90-day signature gathering period." 2-ER-181 (emphasis added). All this statement does, in context, is support the proposition that Oregon City voters *in this campaign* strongly

favored the recall of then-Mayor Holladay. In other words, this recall campaign enjoyed exceptional levels of public support, which was largely the result of the exceptional diligence of the campaign leaders and numerous volunteers. The statement from the letter, however, says nothing about whether the 90-day limitation would have thwarted the campaign's success had the campaign undertaken only "reasonable" diligence, or what impact the 90-day limitation "normally" has on most recall petition campaigns. The statement is simply irrelevant to an evaluation of Appellants' facial challenge under the First Amendment. And yet the district court heavily relied on this one statement buried in a letter attached to the complaint for completely unrelated reasons. *See* 1-ER-48–49.[6]

After summarily concluding (without giving the parties the opportunity to submit evidence at summary judgment or at trial) that the 90-day limitation does not pose a "severe burden" on First Amendment rights, the district court goes on to analyze Appellants' First Amendment claim under the less-

---

[6]      *If* the August 14, 2020, letter to Riggs had any relevance to deciding Appellants' facial challenge under the First Amendment (and it does not), the district court should have analyzed all statements within the 16-page letter instead of cherry-picking a single (and partial) sentence. For example, at pages 13–14 of the letter (2-ER-191–192), Appellants explain why and how the 90-day signature gathering limitation is facially void under the First Amendment *despite* this particular campaign's success. But again, the focus of Appellants' facial challenge under the First Amendment is not what happened in *this* campaign, but rather the severe burden that the 90-day limitation causes in *most* cases, despite reasonable diligence.

exacting "important regulatory interest of the State" standard. 1-ER-49–51. The court cites various reasons that the State of Oregon *might* have to justify imposition of the 90-day limitation, but the fundamental problem with them is that they lack supporting evidence. For example, the district court quotes an Oregon Attorney General opinion from 1972 which speculates that, without a signature-gathering deadline, the recall right would give rise to a parade of horribles. 1-ER-50 (citing 37 Op. Atty Gen. Ore 1399, 1402 (1972)). This is exactly the type of justification that should be tested with evidence *after* the motion to dismiss stage. Without an opportunity for Appellants to dispute alleged "important regulatory reasons of the state" supposedly justifying the imposition of the 90-day limitation, the balancing test required by the *Angle* framework is impossible to implement. Indeed, without the opportunity to present evidence of the severe burden of the 90-day limitation on *most* reasonably-diligent recall campaigns, as contrasted with the evidence of the State's "important regulatory interests," any analysis under *Angle* will be incomplete. *See* 673 F.3d at 1134 (emphasizing that "supporting evidence," and not "speculation," underlies the *Angle* framework). Indeed, the *Angle* court resolved that case at the summary judgment stage, after the opportunity to present evidence had come and gone. *Id.* at 1127.

The district court erred when it considered and relied on "evidence" at the motion to dismiss stage. Without giving Appellants' the open opportunity to

submit evidence supporting their First Amendment allegations (such as at summary judgment or at trial), the court's out-of-context reliance on a single letter attached to Appellants' complaint, which had been provided merely for context, was reversible error.

## VIII. CONCLUSION

For the reasons described above this Court should reverse and remand to the district court or, in the alternative, directly certify Appellant's question of state law to the Oregon Supreme Court (and obtain a certified answer) before remanding. The district court's decision contains numerous errors of law that this Court can and should correct. Specifically, this Court should find that the City is not entitled to state sovereign immunity under the Eleventh Amendment and *Pennhurst*, that Appellant Marl's claims are capable of repetition yet evading review, and that Appellants have sufficiently alleged a facial challenge under the First Amendment. Further, if it doesn't directly certify Appellants' question of state law to the Oregon Supreme Court, then this Court should instruct the district court to do so while staying resolution of the First Amendment claim until that certified question of state law is answered. And finally, if the Court finds the allegations of Appellants' facial First Amendment challenge to be deficient, it should instruct the district court to allow Appellants the opportunity to amend their complaint because amendment is not futile.

Respectfully submitted this 10th day of May 2023.

/s/ Jesse A. Buss
Jesse A. Buss, OSB No. 122919
Willamette Law Group, PC
*Attorney for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-35107

I am the attorney or self-represented party.

**This brief contains** | 12,931 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [           ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Jesse A. Buss | **Date** | 5/10/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**     *Rev. 12/01/22*

## <u>STATUTORY AND REGULATORY ADDENDUM</u>

## TABLE OF CONTENTS

**Oregon Constitution**                                    **Pages**

Or. Const., Art. II, § 18..................................................................A-2

**Oregon Statutes**

Or. Rev. Stat. § 249.875............................................................A-4

## **Oregon Constitution, Article II, Section 18**

**Recall; meaning of words "the legislative assembly shall provide."**

(1) Every public officer in Oregon is subject, as herein provided, to recall by the electors of the state or of the electoral district from which the public officer is elected.

(2) Fifteen per cent, but not more, of the number of electors who voted for Governor in the officer's electoral district at the most recent election at which a candidate for Governor was elected to a full term, may be required to file their petition demanding the officer's recall by the people.

(3) They shall set forth in the petition the reasons for the demand.

(4) If the public officer offers to resign, the resignation shall be accepted and take effect on the day it is offered, and the vacancy shall be filled as may be provided by law. If the public officer does not resign within five days after the petition is filed, a special election shall be ordered to be held within 35 days in the electoral district to determine whether the people will recall the officer.

(5) On the ballot at the election shall be printed in not more than 200 words the reasons for demanding the recall of the officer as set forth in the recall petition, and, in not more than 200 words, the officer's justification of the officer's course in office. The officer shall continue to perform the duties of office until the result of the special election is officially declared. If an officer is recalled from any public office the vacancy shall be filled immediately in the manner provided by law for filling a vacancy in that office arising from any other cause.

(6) The recall petition shall be filed with the officer with whom a petition for nomination to such office should be filed, and the same officer shall order the special election when it is required. No such petition shall be circulated against any officer until the officer has actually held the office six months, save and except that it may be filed against a senator or representative in the legislative assembly at any time after five days from the beginning of the first session after the election of the senator or representative.

(7) After one such petition and special election, no further recall petition shall be filed against the same officer during the term for which the officer was elected unless such further petitioners first pay into the public

treasury which has paid such special election expenses, the whole amount of its expenses for the preceding special election.

(8) Such additional legislation as may aid the operation of this section shall be provided by the legislative assembly, including provision for payment by the public treasury of the reasonable special election campaign expenses of such officer. But the words, "the legislative assembly shall provide," or any similar or equivalent words in this constitution or any amendment thereto, shall not be construed to grant to the legislative assembly any exclusive power of lawmaking nor in any way to limit the initiative and referendum powers reserved by the people.

## Or. Rev. Stat. § 249.875

**(1)**    A recall petition shall be void unless completed and filed not later than the 100th day after filing the prospective petition described in ORS 249.865. Not later than the 90th day after filing the prospective petition the petition shall be submitted to the filing officer who shall verify the signatures not later than the 10th day after the submission. The filed petition shall contain only original signatures. A recall petition shall not be accepted for signature verification if it contains less than 100 percent of the required number of signatures. The petition shall not be accepted for filing until 100 percent of the required number of signatures of electors have been verified.

**(2)**    The provisions for verification of signatures on an initiative or referendum petition contained in ORS 250.105, are applicable to the verification of signatures on a recall petition.