No. 23-35107
_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT
_____

COMMITTEE TO RECALL DAN HOLLADAY; JEANA GONZALES;
ADAM MARL,

      Plaintiffs - Appellants,

          v.

JAKOB WILEY, City Recorder for the City of Oregon City, in his official
capacity,

      Defendant - Appellee,

STATE OF OREGON,

      Intervenor - Defendant - Appellee.
_____

APPELLEE STATE OF OREGON'S BRIEF
_____

Appeal from the United States District Court
for the District of Oregon
_____

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone:  (503) 378-4402
benjamin.gutman@doj.state.or.us

Attorneys for Intervenor – Defendant –
Appellee, State of Oregon
_____
_____

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION .................................................1

STATEMENT OF THE ISSUES .....................................................1

STATEMENT OF THE CASE .......................................................2

    A.    Oregon law sets a 90-day deadline for collecting signatures for a recall petition. ..........................................................2

    B.    Plaintiffs challenged the constitutionality of the 90-day deadline but then managed to meet it...............................................3

    C.    The district court dismissed the lawsuit for lack of jurisdiction and failure to state a claim. ........................................3

        1.    The court dismissed most of the claims based on Eleventh Amendment immunity and mootness................... 4

        2.    The court dismissed the facial First Amendment challenge on the merits, because the 90-day deadline does not impose severe burdens on core political speech................................................................... 7

SUMMARY OF ARGUMENT ........................................................9

STANDARD OF REVIEW ..........................................................11

ARGUMENT.....................................................................11

    A.    The Eleventh Amendment bars plaintiffs' state-law claim, because they challenge actions the city recorder takes as a state official. ...................................................11

        1.    The city recorder acts as a state official when administering nondiscretionary state elections laws. ......... 12

        2.    The district court properly declined to certify the state-law question to the Oregon Supreme Court because it lacked jurisdiction over the state-law claims. ................................................................. 17

    B.    The 90-day deadline for collecting signatures for a recall

petition does not facially violate the First Amendment.................18

    1.    Dicta from Angle does not supply the governing rule of law. ................................................................. 19

    2.    Even under the Angle dicta, the 90-day deadline does not trigger strict scrutiny................................... 24

    3.    The district court correctly held that the 90-day deadline satisfies less exacting scrutiny. ........................... 30

    4.    This Court need not address plaintiffs' mootness argument. ......................................................... 33

CONCLUSION...............................................................34

## TABLE OF AUTHORITIES

### Cases Cited

*Americans for Prosperity Found. v. Bonta*,
    141 S. Ct. 2373 (2021) ...........................................................25

*Angle v. Miller*,
    673 F.3d 1122 (9th Cir. 2012)... 7, 8, 10, 19, 20, 21, 22, 23, 24, 27, 30, 33

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................... 25, 28, 29

*Beisler v. Commissioner*,
    814 F.2d 1304 (9th Cir. 1987)..................................................21

*Buffin v. California*,
    23 F.4th 951 (9th Cir. 2022)................................. 12, 13, 14, 15

*Caruso v. Yamhill Cnty.*,
    422 F.3d 848 (9th Cir. 2005)..................................................32

*Citizens for Honest & Responsible Gov't v. Sec'y of State*,
    11 P.3d 121 (Nev. 2000)........................................................31

*City of Eugene v. Roberts*,
    91 Or. App. 1,
    *aff'd*, 305 Or. 641 (1988).......................................................13

*CPC Patent Techs. PTY Ltd. v. Apple, Inc.*,
    34 F.4th 801 (9th Cir. 2022) ....................................................21

*Crowe v. Oregon State Bar*,
    989 F.3d 714 (9th Cir.),
    *cert. denied*, 142 S. Ct. 79 (2021) .................................... 15, 16

*Cutter v. Wilkinson*,
    544 U.S. 709 (2005) ....................................................33

*Estate of Magnin v. Commissioner*,
    184 F.3d 1074 (9th Cir. 1999)....................................................21

*Georges v. Carney*,
    691 F.2d 297 (7th Cir. 1982)....................................................24

*In re Elliott's Estate*,
    156 P.2d 427 (Wash. 1945) ....................................................21

*Initiative & Referendum Inst. v. Walker*,
    450 F.3d 1082 (10th Cir. 2006)....................................................23

*Kendall v. Visa U.S.A., Inc.*, 5
    18 F.3d 1042 (9th Cir. 2008)....................................................29

*Little v. Reclaim Idaho*,
    140 S. Ct. 2616 (2020) ....................................................21

*Lund v. Cowan*,
    5 F.4th 964 (9th Cir. 2021),
    *cert. denied*, 142 S. Ct. 900 (2022) ....................................................17

*McMillian v. Monroe Cnty.*,
    520 U.S. 781 (1997) ........................................................ 12, 14

*Meyer v. Grant*,
    486 U.S. 414 (1988) ....................................................23

*Molinari v. Bloomberg*,
    564 F.3d 587 (2d Cir. 2009)....................................................23

*Mudpie, Inc. v. Travelers Cas. Ins. Co.*,
    15 F.4th 885 (9th Cir. 2021)............................................................3, 11

*Nev. Comm'n on Ethics v. Carrigan*,
    564 U.S. 117 (2011) ....................................................23

*No on E v. Chiu*,
    62 F.4th 529 (9th Cir. 2023)....................................................33

*O'Connor v. Nevada*,
    27 F.3d 357 (9th Cir. 1994) ....................................................18

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ................................................ 11, 15, 16

*People Not Politicians Or. v. Clarno*,
    826 F. App'x 581 (9th Cir. 2020) ....................................22

*Rubin v. City of Santa Monica*,
    308 F.3d 1008 (9th Cir. 2002) ............................... 28, 33

*Swindol v. Aurora Flight Scis. Corp.*,
    805 F.3d 516 (5th Cir. 2015) ..........................................17

*Syngenta Seeds, Inc. v. Cnty. of Kauai*,
    842 F.3d 669 (9th Cir. 2016) ..........................................18

*Vasquez v. Rackauckas*,
    734 F.3d 1025 (9th Cir. 2013) ........................................15

*Walden v. Nevada*,
    945 F.3d 1088 (9th Cir. 2019) ........................................11

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) .......................................................24

*Weiner v. San Diego County*,
    210 F.3d 1025 (9th Cir. 2000) ....................... 12, 13, 14, 15, 16

## Constitutional and Statutory Provisions

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1367(c)(1) ........................................................18

28 U.S.C. § 1367(c)(3) ........................................................18

28 U.S.C. § 2107(a) ...............................................................1

28 U.S.C. §§ 1331 and 1367 ................................................1

Or. Const., Art. II § 18 .......................................................17

Or. Const., Art. II § 18(1) ....................................................2

Or. Const., Art. II § 18(2) ....................................................2

Or. Const., Art. II § 18(4) ....................................................2

Or. Const., Art. II § 18(8) ....................................................................2

Or. Rev. Stat. § 246.110....................................................................12

Or. Rev. Stat. § 246.210(1)................................................................13

Or. Rev. Stat. § 246.820(1)................................................................13

Or. Rev. Stat. § 249.865(1)..................................................................2

Or. Rev. Stat. § 249.875....... 1, 3, 4, 5, 7, 9, 10, 11, 12, 13, 16, 17, 19, 23, 24, 33

Or. Rev. Stat. § 249.875(1)..................................................................2

Or. Rev. Stat. § 254.005(2)(c) ............................................................2

Or. Rev. Stat. § 28.200....................................................................18

Or. Rev. Stat. §§ 249.865 to 249.877 ..................................................2

U.S. Const., Amend. I .................................. 1, 4, 7, 8, 10, 18, 20, 21, 23, 24, 25

U.S. Const., Amend. XI ...................... 1, 4, 5, 9, 11, 14, 15, 16, 17, 18

## Other Authorities

13B Charles A. Wright et al., Federal Practice & Procedure § 3533.1 (3d ed.
    2008)........................................................................................34

37 Or. Op. Att'y Gen. 1399 (1976), 1976 WL 531445 .....................................31

Christopher R. Berry & Jacob E. Gersen,
    *The Timing of Elections*, 77 U. Chi. L. Rev. 37 (2010) ..........................32

J. D. Barnett,
    *Operation of Initiative, Referendum, and Recall in Oregon* 211 (1915) .31

National Conference of State Legislatures,
    *Recall of State Officials* (2021), *available at*
    https://www.ncsl.org/elections-and-campaigns/recall-of-state-officials .32

# APPELLEE STATE OF OREGON'S BRIEF
_____

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1367, among other statutes.  (E.R. 158).  As explained below, the district court lacked jurisdiction over most of plaintiffs' claims based on Eleventh Amendment immunity and principles of mootness.  This Court has jurisdiction over plaintiffs' appeal of the final decision dismissing their complaint under 28 U.S.C. § 1291.  The district court entered its judgment on January 10, 2023.  (E.R. 2).  Plaintiffs filed a notice of appeal on February 9, 2023.  (E.R. 374).  The notice of appeal was timely under 28 U.S.C. § 2107(a).

## STATEMENT OF THE ISSUES

1.      When a city recorder administers state elections law subject to the supervision and control of the Secretary of State, is the city recorder acting as a state official for purposes of Eleventh Amendment immunity?

2.      Does Or. Rev. Stat. § 249.875, which sets a 90-day deadline for gathering the required signatures for a recall petition, facially violate the First Amendment?

**STATEMENT OF THE CASE**

**A.      Oregon law sets a 90-day deadline for collecting signatures for a recall petition.**

The Oregon Constitution makes every public officer subject "to recall by the electors of the state or of the electoral district from which the public officer is elected." Or. Const., Art. II § 18(1).  The recall process is initiated by filing a petition signed by 15 percent of the number of electors in that district who voted in the most recent gubernatorial election. *Id.* § 18(2).  If the public officer does not resign, a special election is held within 35 days to determine whether to recall the officer. *Id.* § 18(4).

The constitution authorizes the legislature to enact legislation to "aid the operation" of the recall process, *id.* § 18(8), and the Oregon Legislature did so through Or. Rev. Stat. §§ 249.865 to 249.877.  Those statutes require the proponents of a recall petition to file a prospective petition with the officer responsible for ordering the special election—such as the city recorder, in the case of a recall of a municipal officer—before circulating it for signatures.  Or. Rev. Stat. § 249.865(1); *see also id.* § 254.005(2)(c) (defining a city recorder as the chief elections officer regarding measures to be voted on in a city only).  The statutes also set a time limit: The proponents must submit the required signatures by the 90th day after filing the prospective petition. *Id.* § 249.875(1).

**B.     Plaintiffs challenged the constitutionality of the 90-day deadline but then managed to meet it.**

Because this case was decided on a motion to dismiss, the facts alleged in plaintiffs' second amended complaint are taken as true.  *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 15 F.4th 885, 889 (9th Cir. 2021).  On June 22, 2020, plaintiffs filed a prospective recall petition against Oregon City's mayor.  (E.R. 159).  The city recorder determined that plaintiffs needed to collect at least 2,400 signatures—15% of the number of Oregon City electors who voted in the most recent gubernatorial election—by September 21, 2020, which was the 90th day after the filing of the prospective recall petition.  (E.R. 160).

On September 18, 2020, plaintiffs filed this lawsuit challenging the constitutionality of Or. Rev. Stat. § 249.875's 90-day deadline.  (E.R. 381 (docket entry)).  Three days later, on the date of the deadline, plaintiffs turned in more than 3,400 signatures supporting the recall petition.  (E.R. 160).  The city recorder determined that 3,037 signatures were valid and ordered a special election, at which the Oregon City voters recalled the mayor.  (E.R. 161).

**C.     The district court dismissed the lawsuit for lack of jurisdiction and failure to state a claim.**

Plaintiffs—the committee that ran the recall campaign against the Oregon City mayor and two of its organizers—brought this suit against the city recorder in her official capacity.  (E.R. 155–57).  Because this lawsuit challenged the

validity of an Oregon statute, the district court granted the state's unopposed motion to intervene. (E.R. 370 (motion), 379 (docket entry)).

The state moved to dismiss the complaint for lack of jurisdiction and failure to state a claim. (E.R. 332–67). The district court, adopting recommendations from the magistrate judge, granted the state's motion to dismiss. (E.R. 2). The court concluded that it lacked jurisdiction over all but one claim: one of the named plaintiffs' facial First Amendment challenge to Or. Rev. Stat. § 249.875 to the extent it sought prospective relief. And as to the one claim over which it had jurisdiction, the court concluded that the claim failed on the merits.

### 1. The court dismissed most of the claims based on Eleventh Amendment immunity and mootness.

Plaintiffs' complaint asserted both facial and as-applied challenges under the federal and state constitutions. (E.R. 170–72). They sought nominal damages of one dollar, declaratory relief, and prospective injunctive relief. (E.R. 173–74).

The district court methodically analyzed each claim and form of relief sought, and it concluded that nearly all of them were beyond the federal courts' Article III jurisdiction.

***Retrospective relief****:* The Eleventh Amendment bars federal courts from granting damages (including nominal damages) or retrospective declaratory

relief against state officials sued in their official capacities. (E.R. 11–12, 20). Although the defendant in this case was the city recorder, who in other contexts would be considered a local rather than state official, the district court concluded that she was "acting as a state agent when she enforced the 90-day deadline contained in O.R.S. § 249.875." (E.R. 14). Therefore, the court held, the Eleventh Amendment barred plaintiffs' claims against her to the extent they sought nominal damages or a declaratory judgment. (E.R. 14, 21).

*Prospective relief under state law:* The Eleventh Amendment also bars federal courts from granting prospective relief that orders state officials to comply with state law. (E.R. 39). For the same reasons that it concluded the Eleventh Amendment barred retrospective relief against the city recorder here, the district court concluded that the city recorder was acting as a state official and so was immune from federal suit seeking prospective relief under state law. (E.R. 40–41). Because the court therefore lacked jurisdiction over the state-law claims, it declined plaintiffs' request to certify the question of state constitutional law to the Oregon Supreme Court. (E.R. 41–42).

*Prospective relief under federal law:* The court recognized that plaintiffs' request for injunctive relief was moot because they had succeeded in recalling the mayor despite the 90-day deadline. (E.R. 19–21). But plaintiffs argued that their request for injunctive relief fell within the mootness exception

for claims that are capable of repetition yet evading review. (E.R. 21). The district court agreed that challenges to the 90-day deadline were sufficiently transient to qualify for the evading-review prong of the analysis. (E.R. 22). But it held that most of plaintiffs' claims were not sufficiently likely to recur to meet the capable-of-repetition prong. (E.R. 23–29).

Plaintiffs' as-applied challenge was not likely to recur because it was based on the particular difficulty of gathering signatures quickly in the summer of 2020, when the combination of the COVID-19 pandemic and severe wildfires created unprecedented disruptions to civic life. (E.R. 28–29). The district court explained that it was "highly speculative" that any such disruption would happen again in a future election cycle, especially because of the experience plaintiffs had gained in conducting signature-gathering during the pandemic. (E.R. 29 & n.11).

With respect to the facial challenges, the court concluded that one of plaintiffs—Gonzalez—had adequately alleged that her facial challenge would recur against the defendant, the city recorder of Oregon City. (E.R. 27). Unlike the other two plaintiffs, who did not specifically allege that they intended to participate in recall elections in Oregon City in the future, Gonzalez alleged that she intended to file a recall petition against an (unnamed) Oregon City official "in 2022, or as soon as this litigation is concluded." (E.R. 155). The district

court concluded that that allegation was sufficient to satisfy the capable-of-repetition-yet-evading-review exception to mootness and proceeded to address the merits of Gonzalez's facial challenge under the First Amendment. (E.R. 27, 29, 43). It dismissed the other plaintiffs' claims for prospective relief as moot. (E.R. 29).

> **2.** **The court dismissed the facial First Amendment challenge on the merits, because the 90-day deadline does not impose severe burdens on core political speech.**

The district court accepted plaintiffs' argument that the First Amendment challenge is governed by a two-pronged analysis from *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), which addressed state requirements to place voter initiatives on the ballot. (E.R. 47). Under that analysis, laws that impose severe burdens on core political speech must be narrowly tailored and advance a compelling state interest. (E.R. 47). Laws that impose lesser burdens are valid if they serve important regulatory interests, are reasonable, and are nondiscriminatory. (E.R. 47).

The district court concluded that plaintiff Gonzalez had not plausibly alleged that Or. Rev. Stat. § 249.875, on its face, imposes severe burdens on core political speech. (E.R. 48–49). The statute's 90-day deadline does not restrict one-on-one communications between petition circulators and voters. (E.R. 48). And plaintiffs had not plausibly alleged that reasonably diligent

campaigns would rarely be able to satisfy that deadline. (E.R. 48–49). On the contrary, plaintiffs themselves had asserted, in a document attached to and cited in the complaint, that "there is little doubt that, during non-COVID-19 times, the campaign could easily obtain well over 2,400 valid signatures during the statutory 90-day signature gathering period." (E.R. 181).

Because the statute does not impose severe burdens, the court applied the less exacting review dictated by *Angle*. (E.R. 49). It concluded that the state has an important regulatory interest in making sure that a recall petition has sufficient support to warrant a special election. (E.R. 49–50). And it concluded that the 90-day deadline was a reasonable, nondiscriminatory restriction to prevent abuse of the recall process. (E.R. 50–51). Thus, the court held, plaintiff Gonzalez's facial First Amendment challenge to the 90-day deadline failed to state a claim upon which relief could be granted. (E.R. 51).

The district court also denied plaintiffs leave to amend the complaint to add data showing that most recall petitions fail. (E.R. 4). It concluded that amendment would be futile in view of plaintiffs' own statement on the ease of obtaining signatures in a setting not affected by COVID-19 and the absence of allegations establishing the link between failed petitions and the burdens of the 90-day deadline. (E.R. 4). The court also concluded that amendment would be futile because of sovereign immunity and mootness. (E.R. 4).

# SUMMARY OF ARGUMENT

Although plaintiffs originally brought both facial and as-applied challenges to Or. Rev. Stat. § 249.875, on appeal they press only their facial challenges under the state and federal constitutions. The district court correctly dismissed the state challenge based on Eleventh Amendment immunity and the federal challenge for failure to state a claim.

The city recorder was entitled to invoke Eleventh Amendment immunity, which bars suit in federal court against a state official seeking compliance with state law. City recorders act as state officials when enforcing state election laws, including the 90-day deadline in Or. Rev. Stat. § 249.875. Although city recorders are local officials for other purposes, when exercising their designated role under state election laws they are required to comply with directives and instructions issued by the Secretary of State, a state official. That makes them state officials for purposes of the Eleventh Amendment. Plaintiffs' contrary argument relies on an irrelevant line of cases: The question here is not whether Oregon City as an entity is entitled to Eleventh Amendment immunity but rather whether the city recorder is acting as a state or city official when enforcing state election laws. Because the city recorder was acting as a state official, the court correctly dismissed plaintiffs' state-law claims and properly declined to certify the state-law question to the Oregon Supreme Court.

The district court also correctly dismissed plaintiffs' facial First Amendment claim on the merits. The 90-day deadline in Or. Rev. Stat. § 249.875 does not implicate the First Amendment, because it does not restrict communications whatsoever. The First Amendment does not require states to make recall elections a routine part of the political process, and even if the deadline made it difficult or impossible to get a recall measure on the ballot, it would not violate the First Amendment. Although the district court understood this Court's decision in *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), to hold otherwise, that was a misreading of *Angle*.

But the facial claim fails even under the district court's reading of *Angle*. Plaintiffs—whose own recall petition succeeded despite the unprecedented challenges of a pandemic and historic wildfires—did not plausibly allege that the 90-day deadline imposes severe burdens for reasonably diligent campaigns to obtain the signatures they need to place a recall on the ballot. The deadline serves important regulatory interests including ensuring that the recall has sufficient grassroots support and preventing abuse or manipulation of the recall process. Most states that allow recalls have similar or even shorter deadlines; those laws do not facially violate the First Amendment. Plaintiffs' contrary argument confuses questions of fact with questions of law, which are properly decided on a motion to dismiss.

## STANDARD OF REVIEW

This Court reviews de novo the district court's dismissal based on Eleventh Amendment immunity or failure to state a claim. *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019) (Eleventh Amendment immunity); *Mudpie*, 15 F.4th at 889 (failure to state a claim).

## ARGUMENT

Plaintiffs originally brought both facial and as-applied challenges to Or. Rev. Stat. § 249.875 under both the state and federal constitutions. (E.R. 170–72). But on appeal they expressly abandon their as-applied challenges, (App. Br. 1), and thus only their facial challenges remain. As explained below, their state constitutional claim is barred by the Eleventh Amendment, and their federal constitutional claim fails to state a claim upon which relief can be granted. Although plaintiffs raise other issues on appeal, those are the only issues this Court needs to address to affirm.

### A. The Eleventh Amendment bars plaintiffs' state-law claim, because they challenge actions the city recorder takes as a state official.

Plaintiffs do not dispute that the Eleventh Amendment bars suits against state officials sued in their official capacities based on alleged violations of state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). The only dispute on appeal is whether the defendant here—the city recorder of Oregon City—is a "state official" for those purposes.

**1.    The city recorder acts as a state official when administering nondiscretionary state elections laws.**

Both the Supreme Court and this Court have recognized that nominally local officials may act as state officials in some contexts. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785–86 (1997); *Buffin v. California*, 23 F.4th 951, 962 (9th Cir. 2022). In *Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir. 2000), for example, the question was whether a district attorney was acting a county or state official when making decisions about whether to proceed with a prosecution. Although state law listed district attorneys as county officers, this Court concluded that other factors—including that the state Attorney General had direct supervision over the district attorney—showed that the district attorney acted as a state official when making prosecutorial decisions. *Id.* at 1029–31. Similarly, in *Buffin*, this Court held that a county sheriff was acting as a state official when the sheriff took nondiscretionary actions to implement the state's bail laws. 23 F.4th at 962.

Under those cases, the district court correctly concluded that the city recorder of Oregon City acts as a state official when following state elections laws like Or. Rev. Stat. § 249.875. Oregon law requires local elections officials like city recorders to comply with directives and instructions issued by the Secretary of State, a state official and the chief elections officer of the state. *See* Or. Rev. Stat. § 246.110 ("The Secretary of State is the chief elections

officer of this state, and it is the secretary's responsibility to obtain and maintain uniformity in the application, operation and interpretation of the election laws."). The Secretary of State is authorized to "advise and instruct each county clerk" on "election procedures which are under the direction and control of the county clerk," and "[a] county clerk affected thereby shall comply with the directives or instructions." *Id.* § 246.120. County clerks, in turn, "may exercise general supervision of administration of election laws by each local elections official in the county." *Id.* § 246.210(1). Thus, local elections officials like city recorders are required to implement state elections laws uniformly subject to the directives and instructions issued by the Secretary of State. *See also* Or. Rev. Stat. § 246.820(1) (authorizing the Secretary of State to apply for a court order directing a city elections official to comply with the Secretary's instructions); *cf. City of Eugene v. Roberts*, 91 Or. App. 1, 3, *aff'd*, 305 Or. 641 (1988) (holding that the Secretary of State may direct a local election official not to place a measure on the ballot in violation of state law).

As the district court concluded, under the principles discussed in *Weiner* and *Buffin*, a city recorder who enforces the 90-day deadline in Or. Rev. Stat. § 249.875 is acting as a state official. (E.R. 12–14, 40). Like the district attorney in *Weiner*, the city recorder is required to comply with directives from a state official—the Secretary of State—when carrying out the duties at issue in

this case.  And like the county sheriff in *Buffin*, the city recorder is implementing a nondiscretionary state law rather than a local law or policy.  Although the *Buffin* decision expressed "doubts" about the precise test in this context, the district court's decision here is consistent with both of the tests the opinion proposed.  23 F.4th at 963 n.5.  In dicta, this Court questioned whether the test for Eleventh Amendment immunity is the one set forth in *McMillian*, which examines whether the local official is a "policymaker" for the state.  *Id.*; *McMillian*, 520 U.S. at 783.  Instead, this Court suggested that Eleventh Amendment immunity should turn either on whether the sheriff's department was acting as a state entity in this particular context because state law gave it no discretion with respect to bail amounts or on whether the sheriff was serving at the behest of the state courts, which set the bail schedule.  *Buffin*, 23 F.4th at 963 n.5.  The result is the same here under both of those framings: State law gave the city recorder's office no discretion with respect to the deadline for recall petitions, and the city recorder serves subject to the direction of the Secretary of State, a state official, with respect to election matters.  Either way, the city recorder acts as a state official for Eleventh Amendment purposes when administering state elections law.

Plaintiffs do not dispute that analysis, but they argue that the analysis from *Weiner* and *Buffin* does not apply to Eleventh Amendment immunity and

that the district court instead should have applied the test from *Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir.), *cert. denied*, 142 S. Ct. 79 (2021). (App. Br. 11–14). That is not correct. Although *Weiner* and *Buffin* were not Eleventh Amendment cases, this Court has applied the same analysis to Eleventh Amendment questions. In *Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013), this Court addressed whether a California district attorney could be sued for violating state law in making prosecutorial decisions about criminal contempt proceedings. Citing *Weiner*, the Court concluded that the district attorney (although nominally a county official) was acting as a state official in making prosecutorial decisions. *Vasquez*, 734 F.3d at 1041. The Court therefore held that the state-law claims were barred under the Eleventh Amendment as interpreted by *Pennhurst*. *Id.* at 1041. *Vasquez*—which plaintiffs ignore even though the state cited it in the district court (E.R. 65)—is directly on point and demonstrates that the state-versus-local-official analysis from *Weiner* applies equally to Eleventh Amendment issues.

*Crowe* addresses a different question: whether an *entity* is entitled to Eleventh Amendment immunity as an arm of the state. 989 F.3d at 730 (noting that "an *entity* may be organized or managed in such a way that it does not qualify as an arm of the state entitled to sovereign immunity") (emphasis added). But that is not what is at issue here. There is no dispute that the State

of Oregon is a state for purposes of the Eleventh Amendment and that Oregon

City is not.  At issue is whether the city recorder was acting as a state official or

a city official when enforcing state election laws.  The test applied in *Crowe* has

nothing to say on that issue; indeed, some of the factors (such as "whether the

entity may sue or be sued" and "the corporate status of the entity") would be

nonsensical if applied to officials rather than entities.  *Id.* at 731 (setting forth

the multifactor test).

Under the Eleventh Amendment, the ultimate question in an official-

capacity suit against a public official is whether "the state is the real, substantial

party in interest."  *Pennhurst*, 465 U.S. at 101.  The answer to that question

depends on whether the nominal defendant was acting as a state official.  The

principles from *Weiner* and cases like it supply the proper analysis.  The district

court correctly applied those principles, and on appeal plaintiffs do not

challenge the district court's application of the principles to these

circumstances.  This Court therefore should affirm the district court's ruling

that the city recorder is entitled to Eleventh Amendment immunity with respect

to claims about Or. Rev. Stat. § 249.875—and, in particular, that the city

recorder is immune from suit based on state law.  Because the city recorder is

entitled to Eleventh Amendment immunity, the district court also correctly

dismissed plaintiffs' federal claims insofar as they sought retrospective relief,

including nominal damages.  *Lund v. Cowan*, 5 F.4th 964, 969–70 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 900 (2022).

> **2.**     **The district court properly declined to certify the state-law question to the Oregon Supreme Court because it lacked jurisdiction over the state-law claims.**

The city recorder's Eleventh Amendment immunity also resolves plaintiffs' lengthy argument about certification of the state-law question to the Oregon Supreme Court.  (App. Br. 20–37).  Plaintiffs asked the district court to certify to the Oregon Supreme Court the question whether Or. Rev. Stat. § 249.875 violates Article II, Section 18, of the Oregon Constitution, which governs recall petitions.  (E.R. 134).  The district court declined because the Eleventh Amendment bar deprived the court of jurisdiction over plaintiffs' state-law claims, including the claim under Article II, Section 18.  (E.R. 41).  Because it lacked jurisdiction, the court concluded that it had no authority to certify the claim to the Oregon Supreme Court.  (E.R. 41–42).

Plaintiffs do not acknowledge, much less dispute, the district court's reason for declining certification.  Instead, they argue the merits of certification. (App. Br. 21–37).  But if a federal court lacks jurisdiction, it "can neither certify a controlling legal question to a state court nor resolve the merits."  *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518 (5th Cir. 2015).  Indeed, Oregon law does not permit its Supreme Court to accept a certified question of state law

unless the question "may be determinative of the cause then pending in the certifying court." Or. Rev. Stat. § 28.200. The question of state law cannot be determinative of the cause pending in federal court if the federal court lacks jurisdiction over the issue. The district court therefore did not err, much less abuse its discretion, in denying plaintiffs' certification request. *See Syngenta Seeds, Inc. v. Cnty. of Kauai*, 842 F.3d 669, 674 (9th Cir. 2016) (this Court reviews certification denials for abuse of discretion).

If this Court reverses the district court's Eleventh Amendment holding, the proper remedy would be to remand the state-law claims to the district court for further proceedings, not to resolve the certification question now. The district court might well decline to exercise supplemental jurisdiction over the state claims, particularly if—as plaintiffs assert—the claims involve "novel" issues of state law or if the federal claims are all dismissed. 28 U.S.C. § 1367(c)(1), (3); *see, e.g.*, *O'Connor v. Nevada*, 27 F.3d 357, 363 (9th Cir. 1994) (no abuse of discretion in declining supplemental jurisdiction over novel question of state constitutional law).

## B. The 90-day deadline for collecting signatures for a recall petition does not facially violate the First Amendment.

Because plaintiffs' state-law claims are barred by the Eleventh Amendment and they have abandoned their as-applied claims on appeal (App. Br. 1), all that remains is their facial First Amendment challenge to Or. Rev.

Stat. § 249.875.  The district court held that it failed to state a claim on which relief can be granted.  (E.R. 42–51).  At the outset, the court concluded that *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), required it to apply strict scrutiny if the 90-day deadline for gathering signatures imposed "severe burdens" on proponents' ability to place recall elections on the ballot.  (E.R. 43–47).  As explained below, that was a misreading of *Angle*, which merely assumed without deciding that strict scrutiny would be required for certain laws that severely burden ballot access and in any event did not involve recall petitions.  Regardless, the district court correctly concluded that the 90-day deadline does not impose severe burdens and therefore does not trigger strict scrutiny.  The court also correctly concluded that the deadline satisfies less exacting scrutiny.

**1.  Dicta from Angle does not supply the governing rule of law.**

The district court misread *Angle* as requiring strict scrutiny if Or. Rev. Stat. § 249.875 imposed "severe burdens" on proponents' ability to place recall elections on the ballot.  *Angle*—which was about laws governing citizen initiatives, not recalls—stands for no such proposition even in the context of initiatives.  In all events, *Angle* does not apply to laws governing recall elections.

*Angle* upheld, against a facial First Amendment challenge, a Nevada law that required initiative proponents to obtain a certain number of signatures in each of the state's congressional districts—ten percent of the votes cast in the previous general election—to place an initiative on the ballot. 673 F.3d at 1126–27. This Court "assume[d]" for purposes of argument that the law would be subject to strict scrutiny if it "significantly inhibit[ed] the ability of initiative proponents to place initiatives on the ballot." *Id.* at 1133 ("Thus, as applied to the initiative process, we *assume* that ballot access restrictions place a severe burden on core political speech, and trigger strict scrutiny, when they significantly inhibit the ability of initiative proponents to place initiatives on the ballot.") (emphasis added). But it concluded that the plaintiffs' assertions about the law's burdens were "too vague, conclusory and speculative" to meet that standard. *Id.* at 1134. This Court therefore held that strict scrutiny did *not* apply, and it went on to uphold the law under less exacting review. *Id.* at 1134–35.

Even in the context of initiatives, *Angle* did not hold that strict scrutiny applies to state laws just because they make it more difficult to place a measure on the ballot. It merely assumed that such a law would be subject to strict scrutiny and concluded that the Nevada law at issue did not burden ballot access. That is a common mode of reasoning for courts: Even assuming a party

is right about the legal standard, the party would not be entitled to relief. That mode of reasoning does not suggest, much less hold, that the party is correct about the assumed legal standard. *See Estate of Magnin v. Commissioner*, 184 F.3d 1074, 1077 (9th Cir. 1999) (an opinion's assumption of a legal point is not a precedential holding); *Beisler v. Commissioner*, 814 F.2d 1304, 1308 (9th Cir. 1987) (same); *see also In re Elliott's Estate*, 156 P.2d 427, 431 (Wash. 1945) (rejecting the proposition that "what a court *assumes* to be the law in a particular case becomes the established law from that time forward").

The district court reached a contrary conclusion about *Angle* largely because a concurring opinion in the U.S. Supreme Court treated *Angle*'s statement about strict scrutiny as a holding. (E.R. 46 (citing *Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2616 (2020) (Roberts, C.J., concurring)). But that is not a sound basis for overreading *Angle* itself. *Cf. CPC Patent Techs. PTY Ltd. v. Apple, Inc.*, 34 F.4th 801, 809 n.8 (9th Cir. 2022) (explaining that this Court was "unpersuaded" by district court decisions overreading its precedent). The concurring opinion, joined by four justices, predicted that the Supreme Court would disagree with what it understood *Angle* to hold. *See Little*, 140 S. Ct. at 2617 (Roberts, C.J., concurring) ("This is not a case about the right to vote, but about how items are placed on the ballot in the first place* * * . Even assuming that the state laws at issue implicate the First Amendment, such reasonable,

nondiscretionary restrictions are almost certainly justified by the important regulatory interests in combating fraud and ensuring that ballots are not cluttered with initiatives that have not demonstrated sufficient grassroots support."). Because *Angle* did not so hold, this Court should disavow the suggestion that it did. *Cf. People Not Politicians Or. v. Clarno*, 826 F. App'x 581, 592 (9th Cir. 2020) (R. Nelson, J., dissenting) (recommending that the Court reconsider *Angle* en banc "*[i]f Angle* truly does require strict scrutiny*")* (emphasis added).

But even if *Angle* supplied the governing standard for initiatives, this Court should not extend it to cover recall petitions as well. *Angle* assumed that laws making it difficult to place an initiative on the ballot could implicate "core political speech" by limiting the proponents' ability to make the measure "the focus of statewide discussion." 673 F.3d at 1133. Whatever force that concern may have in the context of voter-sponsored initiatives, it makes little sense in the context of recall elections. Public officials have time-bound terms and must stand for election regularly. In contrast to unsuccessful initiatives that may never appear on the ballot, elected officials' performance is automatically a focus of public discussion because the regular election cycle automatically makes it so. At most laws that restrict additional recall elections channel that discussion into a predictable election calendar. But that does not implicate the

First Amendment any more than laws that limit an official's term to four years rather than two, or two years rather than one. The First Amendment does not require the federal or state government to adopt shorter terms to increase political discourse about public officials' performance.

Without *Angle*, plaintiffs' First Amendment claim collapses. Or. Rev. Stat. § 249.875 would implicate the First Amendment only if it restricted speech—for example, if it prohibited one-on-one communications between recall proponents and voters outside the 90-day signature-gathering period. *Cf. Meyer v. Grant*, 486 U.S. 414, 422 (1988) (striking down a law that prohibited using paid signature-gatherers for an initiative petition); *see also Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006) (en banc) (noting that the law at issue in *Meyer* "specifically regulated the process of advocacy itself: the laws dictated *who* could speak (only volunteer circulators and registered voters) or *how* to go about speaking (with name badges and subsequent reports)"). But Oregon law does no such thing. The First Amendment confers no "right to use governmental mechanics to convey a message." *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011). As result, the First Amendment is not concerned with how difficult it may be under a state's laws to get a recall measure on the ballot. *Cf. Molinari v. Bloomberg*, 564 F.3d 587, 602 (2d Cir. 2009) (the difficulty of placing a measure on the

ballot "is insufficient to implicate the First Amendment" as long as there is no restriction on communication of ideas); *Georges v. Carney*, 691 F.2d 297, 301 (7th Cir. 1982) (no First Amendment concern even though state law "made it practically impossible" to put advisory initiatives on the ballot).

This Court can affirm the dismissal of plaintiffs' facial First Amendment claim on that basis alone.

### 2. Even under the Angle dicta, the 90-day deadline does not trigger strict scrutiny.

This Court also can affirm if it assumes, as it did in *Angle*, that a state law that imposes a "severe burden" on ballot access triggers strict scrutiny because it may indirectly "reduce the total quantum of speech on a public issue." 673 F.3d at 1133 (brackets omitted). To determine whether a law imposes a "severe burden," this Court asks whether "reasonably diligent" campaigns "can normally gain a place on the ballot" or will only "rarely succeed in doing so." *Id.* Plaintiffs did not plausibly allege here that Or. Rev. Stat. § 249.875 imposes a severe burden on ballot access for reasonably diligent campaigns.

Because plaintiffs raise a facial challenge rather than a challenge "in the context of an actual election," they face a formidable legal standard. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Generally, "a plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, *i.e.,* that

the law is unconstitutional in all of its applications." *Id.* (cleaned up).  At a minimum, "a facial challenge must fail where the statute has a plainly legitimate sweep." *Id.* (quotation marks omitted).  In some First Amendment contexts, "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021).  But even if that standard applied to the claims at issue here, it would not be enough for plaintiffs to show that the Oregon law could be unconstitutional in some applications; they would have to show that it would be unconstitutional in a substantial number of applications.

To survive a motion to dismiss, plaintiffs' complaint "must contain sufficient factual matter" to state a "plausible" claim for relief; "mere conclusory statements" do not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, here plaintiffs had to allege sufficient facts to plausibly suggest that the 90-day deadline would be unconstitutional in a substantial number, if not all, applications.

They did not do so.  As an initial matter, unlike laws regulating candidates and initiatives, laws restricting recall petitions pose *no* cognizable burdens on access to the ballot.  The public official must still stand for reelection at the end of the official's term.  Laws regulating the recall process

merely determine when the next election takes place, not whether it takes place at all. The same total quantum of speech on the relevant public issue—the public official's performance in office—is likely to happen, perhaps just at a later time. By contrast, a law that prevents an initiative or candidate from qualifying for the ballot may mean that the initiative or candidate never appears on the ballot and therefore reduces the quantum of speech on the issue across time.

Putting that categorical point to the side, the district court correctly held that plaintiffs' complaint did not plausibly allege facts suggesting that the 90-day deadline prevents reasonably diligent recall campaigns from obtaining the signatures they need in all or a substantial number of circumstances. (E.R. 48–49). The complaint asserts, without elaboration, that the deadline is "unrealistic." (E.R. 153). But that conclusory statement is not sufficient under *Iqbal*, and the more specific factual allegations in the complaint do not support it. The complaint alleges that plaintiffs themselves succeeded in obtaining more than enough signatures within 90 days, even at the height of the COVID-19 pandemic and during severe wildfires. (E.R. 160). To be sure, plaintiffs alleged that it was more difficult and expensive to do so than it would have been if there was no deadline. (E.R. 161–65; *see also* App. Br. 40–42 (quoting provisions of the complaint)). But they did not allege that it was the 90-day

deadline itself, rather than the extraordinary disruptions of the pandemic and wildfire, that made it more difficult. Quite to the contrary: The complaint attached a letter they sent to the city recorder asserting that "there is little doubt that, during non-COVID 19 times, the campaign could easily obtain well over 2,400 valid signatures during the statutory 90-day signature gathering period." (E.R. 181).

Plaintiffs dispute that that statement reflects anything about the burdens of the 90-day deadline, asserting that it was "merely intended to convey an attitude of confidence." (App. Br. 46–47). But none of the complaint's allegations support a contrary conclusion. Plaintiffs point primarily to the complaint's statement that "most recall campaigns fail to obtain the requisite number of petition signatures" and its assertion that "[t]his is, in large (and obvious) part, due to lack of adequate time to gather signatures." (E.R. 166, *quoted in* App. Br. 43). But the complaint does not allege *any* factual information about those failed campaigns that would show whether they were "reasonably diligent" under *Angle*. That is not a "hyper-specific code-pleading" requirement (App. Br. 43); it is the core of the constitutional standard under *Angle*.

Having more time will always make it easier to gather more signatures, but that is not the relevant question under *Angle*. The question is whether, for a

recall campaign that has sufficient public support to warrant a special election, a reasonably diligent campaign generally can reach those supporters within the 90-day period.  To survive a motion to dismiss, plaintiffs would have had to plead enough facts to allow the court to draw a reasonable inference that recall proponents always or at least often cannot reach their supporters within 90 days. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  But the complaint here contains no such facts.  Nothing in the complaint explains why a well-organized recall campaign that reflects widespread popularity among voters cannot generally, outside the unusual circumstances of a pandemic or wildfire disruptions, obtain the required signatures within 90 days.

Contrary to plaintiffs' characterization, that does not require an "improper weighing of evidence at the motion to dismiss stage."  (App. Br. at 50.) Whether an elections statute imposes such severe burdens as to trigger strict scrutiny is a question of law that can be determined on a motion to dismiss.  *See Rubin v. City of Santa Monica*, 308 F.3d 1008, 1017 (9th Cir. 2002) (holding, on review of a motion to dismiss, that the statutes at issue did not impose "severe" burdens on free speech rights).  Regardless, the defect in the complaint here is the absence of factual content supporting plaintiffs'

conclusory assertions. Even if their acknowledgment that they could "easily obtain" the required signatures within 90 days but for the pandemic and wildfires (E.R. 181) was not dispositive of their facial claim, they still are unable to point to anything in the complaint that allows a reasonable inference that the 90-day deadline is generally unachievable.

The district court also did not err in declining to allow plaintiffs another opportunity to amend their complaint to bolster their allegations. Plaintiffs suggest that they would further explain that "most recall petitions fail to qualify for the ballot despite reasonable diligence by the petitioners," (App. Br. 44; *see also* E.R. 80 (same assertion to the district court)), but they do not explain what specific factual content they would proffer that would plausibly allow a court to draw that conclusion. Without that factual content, plaintiffs' allegations would remain "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up). None of that suffices to overcome a motion to dismiss. *Id.* The district court properly concluded that amendment would be futile without specific factual allegations supporting plaintiffs' conclusory assertions. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1052 (9th Cir. 2008) ("Appellants fail to state what additional facts they would plead

if given leave to amend, or what additional discovery they would conduct to discover such facts.  Accordingly, amendment would be futile.").

### 3. The district court correctly held that the 90-day deadline satisfies less exacting scrutiny.

Under *Angle*, when strict scrutiny does not apply, "the state need only show that [challenged law] furthers an important regulatory interest."  673 F.3d at 1134–35 (quotation marks omitted).  Just like a state "undeniably has an important regulatory interest in making sure that an initiative has sufficient grass roots support to be placed on the ballot," *id.* at 1135 (quotation marks omitted), a state has an important regulatory interest in making sure that a recall petition has sufficient grassroots support to warrant placement on the ballot.  And the state has "considerable leeway" to decide how to measure that support.  *Id.*  A requirement that is common among states is particularly likely to survive scrutiny.  *See id.* (relying in part on the fact that "[h]alf of the states with initiatives currently impose a geographic distribution requirement on petition signatures").

The 90-day deadline for gathering signatures furthers Oregon's interest in ensuring that a recall petition has sufficient grassroots support to warrant placement on the ballot.  It ensures that the grassroots support exists at a defined moment in the public official's term.  Without a deadline, circumstances related to the reasons for a recall could change significantly

between when some voters signed the petition and when others did. By the time the process was complete, some who signed the petition early on might no longer support a recall. A deadline for gathering signatures allows the process to better capture a snapshot of the electorate's will at a particular time. *Cf. Citizens for Honest & Responsible Gov't v. Sec'y of State*, 11 P.3d 121, 126 (Nev. 2000) (upholding a deadline for recall petitions because it "serves to put all parties involved on notice of when the petition will be submitted so that they may respond accordingly").

As the district court recognized, the 90-day deadline also prevents abuse of the recall power. (E.R. 50). Without a deadline, proponents could gather the signatures at one time but hold off turning them in to the elections official and thereby keep the threat of a recall hanging over the target for the rest of the term. "It is possible that a recall petition, based upon good grounds or not, may be circulated, and then when completed or nearly completed, be put in 'cold storage' to await a more convenient opportunity for a sudden assault upon the officer involved." 37 Or. Op. Att'y Gen. 1399 (1976), 1976 WL 531445, at *2 (quoting J. D. Barnett, *Operation of Initiative, Referendum, and Recall in Oregon* 211 (1915)). "Such a program could be employed to bully and control officials." *Id.* More generally, the state has an interest in limiting petitioners' ability to manipulate the timing of special elections for political advantage. *Cf.*

Christopher R. Berry & Jacob E. Gersen, *The Timing of Elections*, 77 U. Chi. L. Rev. 37, 42 & n.26 (2010) (citing research that the choice of election dates can be manipulated to affect outcomes).

The legitimacy of a 90-day deadline for recall petitions is confirmed by a comparison to other states' laws. Seventeen of the nineteen states that allow recalls of state officials impose deadlines on recall petitions. National Conference of State Legislatures, *Recall of State Officials* (2021), *available at* https://www.ncsl.org/elections-and-campaigns/recall-of-state-officials (last visited May 30, 2023). Eleven of those states have deadlines as short or shorter than Oregon's, and all but one of the states that allow more time have higher signature thresholds than Oregon's 15 percent. *See id.* In other words, a deadline of 90 days or shorter is commonplace and does not thwart the recall process.

Plaintiffs do not dispute any of that. Instead, they argue that it is inappropriate for a court to apply less-exacting scrutiny at a motion-to-dismiss stage because the state's interests "lack supporting evidence." (App. Br. 52). But plaintiffs confuse questions of fact with questions of law. Whether an elections law serves an important regulatory interest is a question of law. *Caruso v. Yamhill Cnty.*, 422 F.3d 848, 861 (9th Cir. 2005) ("The sufficiency of this interest presents a question of law, which we review de novo."). And that

question of law can be decided on a motion to dismiss. *See Rubin*, 308 F.3d at 1019 (holding, on review of a motion to dismiss, that the challenged laws further an important governmental interest).

Because the 90-day deadline for recall petitions serves an important regulatory interest, Or. Rev. Stat. § 249.875 is constitutional even assuming that *Angle* supplies the standard for a legal challenge.

### 4. This Court need not address plaintiffs' mootness argument.

The district court concluded that the facial claim of one plaintiff—Gonzalez—was not moot because it was capable of repetition yet evading review. (E.R. 21–27). On appeal, plaintiffs argue that the facial claim of the other named plaintiff, Merl, also was not moot. (App. Br. 16). But this Court need not address that question, because it is irrelevant to the proper disposition of the appeal.

A case remains justiciable if it is not moot as to "at least one plaintiff." *No on E v. Chiu*, 62 F.4th 529, 537 (9th Cir. 2023). Thus, if at least one plaintiff satisfies the capable-of-repetition exception to mootness, the court need not determine whether the case is moot as to other plaintiffs. *See Cutter v. Wilkinson*, 544 U.S. 709, 712 n.1 (2005) (declining to determine if the case was moot as to some plaintiffs when "[w]ithout doubt" it was not as to others); *see also* 13B Charles A. Wright et al., Federal Practice & Procedure § 3533.1 (3d

ed. 2008) ("[A] live action remains despite mooting as to some parties so long as there is a non-moot dispute between at least one plaintiff and one defendant.").

Because—at least at the pleading stage—plaintiff Gonzalez's facial claim remains live, this Court need not determine whether plaintiff Merl's identical claim also remains live. And because, as explained above, that facial claim fails to state a claim, the district court correctly dismissed it on the merits.

## CONCLUSION

This Court should affirm the district court's dismissal of the complaint.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

/s/  Benjamin Gutman
BENJAMIN GUTMAN  #160599
Solicitor General
benjamin.gutman@doj.state.or.us

Attorneys for Intervenor-Defendant-
Appellee
State of Oregon

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellee's Brief is proportionately spaced, has a typeface of 14 points or more and contains 7,773 words.

DATED:  July 7, 2023

/s/  Benjamin Gutman
_____
BENJAMIN GUTMAN  #160599
Solicitor General
benjamin.gutman@doj.state.or.us

Attorney for Intervenor-Defendant-
Appellee
State of Oregon

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Appellee

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| COMMITTEE TO RECALL DAN HOLLADAY; JEANA GONZALES; ADAM MARL, | |
| Plaintiffs - Appellants, | U.S.C.A. No. 23-35107 |
| v. | |
| JAKOB WILEY, City Recorder for the City of Oregon City, in his official capacity, | STATEMENT OF RELATED CASES |
| Defendant - Appellee, | |
| STATE OF OREGON, | |
| Intervenor - Defendant - Appellee. | |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of

Appeals for the Ninth Circuit, the undersigned, counsel of record for Appellee,

/ / /

/ / /

/ / /

/ / /

certifies that he has no knowledge of any related cases pending in this court.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


/s/  Benjamin Gutman
BENJAMIN GUTMAN  #160599
Solicitor General
benjamin.gutman@doj.state.or.us

Attorneys for Intervenor-Defendant-
Appellee
State of Oregon

# CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I directed the Appellee State of Oregon's Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Benjamin Gutman
_____

BENJAMIN GUTMAN #160599
Solicitor General
benjamin.gutman@doj.state.or.us

Attorney for Intervenor-Defendant-
Appellee
State of Oregon
