No. 23-35107

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

COMMITTEE TO RECALL DAN HOLLADAY,
JEANA GONZALES, and
ADAM MARL,
*Plaintiffs – Appellants*,

v.

JAKOB WILEY, City Recorder for Oregon City, in his official capacity,
*Defendant – Appellee*,

and

STATE OF OREGON,
*Intervenor-Defendant – Appellee.*

# REPLY BRIEF OF
# COMMITTEE TO RECALL DAN HOLLADAY,
# JEANA GONZALES, and ADAM MARL

On Appeal from the United States
District Court of Oregon, Honorable Michael W. Mosman
Case No: 3:20-CV-01631-YY

Jesse A. Buss, OR Bar No. 122919
Willamette Law Group, PC
411 Fifth Street, Oregon City OR 97045-2224
Tel: 503-656-4884, Email: jesse@WLGpnw.com
*Attorney for Plaintiffs-Appellants*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................2

I. Introduction ..................................................................................................3

II. Argument......................................................................................................3

    A. The City of Oregon City is not immune under the Eleventh Amendment because it is not an "arm of the state." ........................................................3

    B. This Court should address Appellants' mootness arguments related to Adam Marl............................................................................................................6

    C. The question of state law should be certified to the Oregon Supreme Court..................................................................................................................8

    D. *Angle* is binding, and Appellants should have the chance to establish that strict scrutiny applies by proving that the challenged 90-day signature gathering limitation significantly inhibits the ability of recall proponents to qualify for the ballot......................................................................................10

III. Conclusion ................................................................................................14

CERTIFICATE OF COMPLIANCE

TABLE OF AUTHORITIES

                                                                                                                                  Page(s)

**Cases**

*Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) ...................................10, 11, 12, 13

*Buffin v. California*, 23 F.4th 951 (9th Cir. 2022)..............................................3, 4, 5

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520
    (9th Cir. 2015)......................................................................................................11

*Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir. 2021)................................4, 5, 6

*Cutter v. Wilkinson*, 544 U.S. 709 (2005)...................................................................7

*Kentucky v. Graham,* 473 U.S. 159 (1985)................................................................6

*Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988) ..........................4. 6

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)...........................5

*Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ......................9, 10

*Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013)............................................5

*Weiner v. San Diego Cty.*, 210 F.3d 1025 (9th Cir. 2000)................................3, 4, 5

*Western Helicopter Services, Inc., v. Rogerson Aircraft Corporation*,
    311 Or. 361 (1991) ......................................................................................8, 9, 10

**Constitutions**

U.S. Constitution, 1st Amendment ....................................................3, 10, 11, 12, 14

Oregon Constitution, Article II, Section 18............................................................9

# I. Introduction

Appellants respectfully submit this Reply Brief in response to the State's Answering Brief. As explained below (and in the Opening Brief), the Eleventh Amendment does not bar Appellants' state law claim against the City of Oregon City; the district court simply applied the wrong test on that issue. Further, this Court should reach Appellants mootness-related arguments and their certification arguments. Finally, Appellants' Second Amended Complaint should survive the State's motion to dismiss because it properly alleges a First Amendment claim, and Appellants should therefore be permitted the opportunity to submit evidence on summary judgment (and/or trial) to prove that the challenged 90-day signature gathering limitation is subject to strict scrutiny analysis. If the Second Amended Complaint needs additional supporting allegations, Appellants should be granted the opportunity to amend.

# II. Argument

**A.  The City of Oregon City is not immune under the Eleventh Amendment because it is not an "arm of the state."**

This Court can resolve the parties' dispute about whether Eleventh Amendment immunity applies to the City simply by deciding which line of cases governs here. The State urges, and the district court agreed, that *Buffin v. California*, 23 F.4th 951 (9th Cir. 2022), and *Weiner v. San Diego County*, 210 F.3d

1025 (9th Cir. 2000), govern the Eleventh Amendment immunity analysis. Appellants disagree, arguing that *Crowe v. Oregon State Bar*, 989 F3d 714 (9th Cir. 2021), *cert. den.*, 142 S. Ct. 79 (2021), and *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988), supply the proper Eleventh Amendment framework. Appellants have it right.

The State admits that "*Weiner* and *Buffin* were not Eleventh Amendment cases." Aw Br (Dkt.17 at 21). In fact, the *Buffin* court went out of its way to emphasize as much:

> "In this appeal, we do not review the accuracy of the district court's Eleventh Amendment analysis. Indeed, we likely lack jurisdiction on that front, as the only order on appeal is the district court's attorney's fees order. And even if we had jurisdiction, the State has not disputed the district court's merits holdings, meaning it has waived those arguments. We therefore must assume that the Sheriff shared in the State's Eleventh Amendment immunity.
>
> "We do note, however, that the district court concluded the Sheriff possessed Eleventh Amendment immunity in this suit based on its *McMillian* analysis. We have doubts about whether that was the proper analytical framework. The *McMillian* inquiry governs only whether Buffin and Patterson had asserted a viable § 1983 claim against the County. *See generally Taylor v. Cnty. of Pima*, 913 F.3d 930, 936–38 (9th Cir. 2019) (Graber J., concurring); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[T]he scope of the Eleventh Amendment and the scope of § 1983 are [ ] separate issues.").

23 F.4th at 963, fn 5 (internal citations omitted). Again, and as explained in the

Opening Brief (Dkt.8 at 19-23), *Buffin* and *Weiner* set forth the test governing whether a plaintiff has a viable § 1983 claim against a local official, not whether that local official is immune under the Eleventh Amendment. As the *Buffin* court expressly stated, those "are separate issues." 23 F.4th at 963, fn 5.

The State argues that *Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013), "is directly on point and demonstrates that the state-versus-local-official analysis from *Weiner* applies equally to Eleventh Amendment issues." Aw Br (Dkt.17 at 21). Not so. While *Vasquez* does somewhat confusingly cite *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), and *Weiner* in the same paragraph, it expressly cites *Weiner* as governing the liability analysis under § 1983, not as governing the Eleventh Amendment immunity analysis. *Vasquez*, 734 F.3d at 1041 ("For purposes of § 1983 liability, whether a California 'county district attorney acts as a state' rather than local 'official' depends on the particular acts challenged in the § 1983 suit."). Further, if *Vasquez* (a 2013 case) could somehow be read as modifying the Eleventh Amendment immunity analysis, then it conflicts with, and has implicitly been overruled by, the later-decided *Crowe* and *Buffin*. And finally, if *Vasquez* stood for the remarkable proposition the State now urges, parties and courts over the past decade would have taken notice of the legal sea change, but apparently no case has ever cited *Vasquez* the way the State attempts to use it here (i.e. as setting forth the Eleventh Amendment immunity test, rather than just the §

1983 liability test).

As this Court recognized in *Crowe* in 2021, "the different tests for state action [] are quite different from our consideration of factors required for immunity [under the Eleventh Amendment]".). 989 F.3d at 730. Indeed, as the Court explained in *Crowe*, even "an instrumentality of the government of the State of Oregon," such as the Oregon State Bar (created and governed by state statute), is not entitled to immunity under the Eleventh Amendment unless is satisfies the five-factor *Mitchell* test.[1] *Id.* at 730-31. Here, the district court committed reversible error when it did not apply the *Mitchell* test at all. Without applying the *Mitchell* test, the district court's conclusion that the City is entitled to immunity under the Eleventh Amendment is completely unsupported and must be reversed.

**B.     This Court should address Appellants' mootness arguments related to Adam Marl.**

One of Appellants' arguments on appeal is that the district court erred in finding that Adam Marl's claims are moot and not capable of repetition. In

---

[1]     The State argues (Dkt.17 at 21-22) that *Crowe* applies only to municipal *entities*, and not municipal *officials.* That is a distinction without a meaning here, where the defendant city recorder was sued in their official capacity. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.")(internal citations omitted). Because the *entity* the City of Oregon City is the real defendant here, *Crowe* and *Mitchell* apply even under the State's (incorrect) "entity vs. official" argument.

response, the State argues that this Court should not address Appellants' mootness-related arguments involving Mr. Marl because the district court found that another plaintiff, Jeana Gonzales, has alleged non-moot claims (or moot claims that are capable of repetition) and therefore a live controversy remains. *See* Aw Br (Dkt.17 at 39-40). The Court should reject the State's suggestion, address Appellants' mootness arguments, and find that Mr. Marl's facial claims are capable of repetition, thereby reinstating him as a plaintiff with active claims below.

The State cites *Cutter v. Wilkinson*, 544 U.S. 709, 712 n.1 (2005), for the proposition that courts should decline to determine if a case is moot as to some plaintiffs when "[w]ithout doubt" it was not moot as to others. Aw Br (Dkt.17 at 39). But the State has never admitted (and is unlikely to admit) that the remaining individual plaintiff, Ms. Gonzales, "without doubt" has a live, non-moot claim. Indeed, this case remains at the pleading stage, so while the district court has properly determined that Ms. Gonzales has properly *pleaded* non-moot claims, it remains to be seen whether the State will raise a mootness challenge once this case progresses to and through the discovery phase. Stated differently, while Appellants will (if needed and at the appropriate procedural posture) present evidence/facts showing that Ms. Gonzales has a live, non-moot claim, unless the State is prepared to stipulate that Ms. Gonzales "without doubt" has a live, non-moot claim, then there remains doubt about the mootness issue. Thus, even under the State's

proposed *Cutter* standard, this Court should proceed to address the mootness argument related to Mr. Marl's claims.

If, for example, on remand the State somehow succeeds in convincing the district court that the facts show Ms. Gonzales does *not* have any remaining live claims, then it will be necessary for Appellants to rely on Mr. Marl's remaining live claims in order to keep this case or controversy alive. That is why it is important for this Court to address the mootness issues related to Mr. Marl's claims, all of which were dismissed by the district court for mootness.

The State has not substantively responded to Appellant's mootness-related arguments at all. Having failed to offer a substantive response in its answering brief, the State should be precluded from arguing this issue at oral argument, and the Court should reinstate Mr. Marl's claims for the reasons set forth in Appellants' opening brief (Dkt.8 at 23-27).

**C.  The question of state law should be certified to the Oregon Supreme Court.**

Appellants have assigned error to the district court's refusal to certify the question of state law to the Oregon Supreme Court, and have asked this Court to either directly certify the question or to remand with instructions to certify the question. Op Br (Dkt.8 at 45). The State does not address Appellants' substantive arguments for certification under *Western Helicopter Services, Inc. v. Rogerson*

*Aircraft Corporation*, 311 Or. 361 (1991). Instead, the State argues that this Court should not consider certification at all, and that any certification decision should be made by the district court on remand if this Court reverses the district court's Eleventh Amendment immunity decision. Aw Br (Dkt.17 at 24).

Appellants' requested relief is more appropriate. While this Court could remand for additional consideration regarding certification, doing so would serve no useful purpose. Indeed, as the State admits, "[t]he district court declined [to certify] because the Eleventh Amendment bar deprived the court of jurisdiction over plaintiffs' state-law claims, including the claim under Article II, Section 18 [of the Oregon Constitution]." Aw Br (Dkt. 17 at 23). If this Court reverses the district court on the Eleventh Amendment immunity issue, then the district court's reason for rejecting state court certification no longer applies. And in any event, the State should not be given yet another opportunity to engage with the *Western Helicopter* factors below when it has repeatedly refused to do so, both before the district court (*see* ER-112) and before this Court. Finally, while the State suggests that, instead of certifying to the Oregon Supreme Court, the district court might abstain from exercising supplemental jurisdiction over the state law claims, the district court has already rejected the State's invitation to do so. *See* ER-42 (Findings and Recommendations, finding that "*Pullman* abstention is not advisable

in cases involving core First Amendment rights."[2]).

Because the district court rejected the State's invitation to invoke *Pullman* abstention over Appellants' state law claims, and only rejected certification to the Oregon Supreme Court because of its Eleventh Amendment immunity decision, this Court should directly certify the state law question to the Oregon Supreme Court. In the alternative, this Court could remand with instructions to certify. In any event, however, Appellants have shown that the *Western Helicopter* factors strongly favor certification, and the State has not even attempted to demonstrate otherwise.

**D.** ***Angle* is binding, and Appellants should have the chance to establish that strict scrutiny applies by proving that the challenged 90-day signature gathering limitation significantly inhibits the ability of recall proponents to qualify for the ballot.**

The State argues that *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), is not binding on this Court because the relevant language is only "dicta." Aw Br (Dkt.17 at 25-28). The State's argument hinges on *Angle*'s use of the word "assume": "Thus, as applied to the initiative process, we assume that ballot access restrictions place a severe burden on core political speech, and trigger strict scrutiny, when they significantly inhibit the ability of initiative proponents to place initiatives on the ballot." Dkt.17 at 26 (quoting *Angle*). The district court easily and correctly

---

[2] "*Pullman* abstention" is a reference to the doctrine set forth in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

disposed of that argument by noting that the word "assume" was not used by the

*Angle* court as a for-the-sake-of-argument type reasoning exercise:

> "The state seizes upon the 'assume' term [in *Angle*] and argues that everything that follows, including the framework itself, is simply an analytical exercise based on a hypothetical assumption. But it is fairly easy to read the phrasing in *Angle* as a conditional standard: if a plaintiff shows that a ballot access restriction significantly inhibits the ability of proponents to qualify for the ballot (i.e. by showing a substantial burden), then strict scrutiny applies; otherwise, as was the case in *Angle*, rational basis review is employed."

ER-46 (Findings and Recommendations). Further, as the district court pointed out, ER-46-47, this language from *Angle* has been treated as binding by other courts, including the Chief Justice of the Supreme Court. *See also, e.g., Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 534 (9th Cir. 2015)(treating this standard from *Angle* as binding).

The State also argues that *Angle* does not apply to recall petitions, but the district court correctly rejected that contention:

> "The state disputes that *Angle* is appropriate here, but neither of its justifications for deviating from the framework are particularly persuasive. The state suggests that the *Angle* standard should be limited to the context of initiative petitions, and not applied to laws regulating recall petitions, because (1) 'there is no right to recall under the federal Constitution' and (2) applying similar standards to 'qualify for the ballot at a regularly scheduled election and to trigger a recall is nonsensical.' [] But the first reason is not unique to recall petitions: there is also no explicit 'First Amendment right to place

11

> an initiative on the ballot.' *Angle*, 673 F.3d at 1133. As for the second reason, while the state may disparage *Angle*'s application to the recall context as 'nonsensical,' courts have found that the *Angle* framework 'is most analogous' to recall petition challenges. *Fight for Nevada v. Cegavske*, 460 F.Supp. 3d 1049, 1057 (D. Nev. 2020)."

ER-45.

Although the district court correctly found that *Angle* is binding (as opposed to dicta), and that it applies in the recall context, where the district court went wrong was in finding that the Second Amended Complaint does not allege enough facts to survive a motion to dismiss, and in concluding that Appellants' "facial challenge fails to demonstrate a severe burden on a First Amendment right" under *Angle*. ER-48.

Appellants' Opening Brief describes in detail the allegations of the Second Amended Complaint that save it from dismissal, and most notably the following allegation: "it is well-established that most recall campaigns fail to obtain the requisite number of petition signatures. This is, in large (and obvious) part, due to lack of adequate time to gather signatures." Dkt.8 at 48-51. This allegation triggers the second method, under *Angle*, by which a plaintiff may demonstrate a "severe burden" on core political speech. As the district court put it, "[t]he Ninth Circuit has advised that when analyzing this scenario, 'the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, reasonably diligent candidates can normally gain a place on the

ballot, or whether they will rarely succeed in doing so.'[*Angle*] at 1133."[3]

Appellants should be permitted the opportunity to *prove* this allegation, and thus to demonstrate that reasonably diligent petitioners normally will not be able to qualify for the recall ballot because of the 90-day signature gathering limitation. If Appellants can bring forward evidence making that showing (as alleged in the Complaint), then strict scrutiny will apply under *Angle*. It was inappropriate for the district court to consider "evidence" at the motion to dismiss stage, and to conclude based on that "evidence" that strict scrutiny does *not* apply here. There is no evidence at the motion to dismiss stage, only allegations. Just as the plaintiffs in *Angle* had the opportunity to do (evidence was submitted there on summary judgment), Appellants here should be allowed to muster and present their evidence at summary judgment or at trial regarding whether the challenged limitation "significantly inhibits" the ability of recall proponents to qualify for the ballot. *Angle*, 673 F.3d at 1133.

---

[3] This allegation also satisfies the applicable pleading standard as articulated by the State in its Answering Brief: "To survive a motion to dismiss, plaintiffs would have had to plead enough facts to allow the court to draw a reasonable inference that recall proponents always or at least often cannot reach their supporters within 90 days." Dkt.17 at 34.

13

## III. Conclusion

For the reasons described above and in the Opening Brief this Court should reverse and remand to the district court for further proceedings or, in the alternative, directly certify Appellants' question of state law to the Oregon Supreme Court (and obtain a certified answer) before remanding. On remand, Appellants should be permitted to present evidence supporting their First Amendment claim, including but not limited to evidence showing that the challenged 90-day signature gathering limitation significantly inhibits the ability of recall proponents to place recall petitions on the ballot. The district court erred in resolving that evidentiary question at the motion to dismiss stage.

Respectfully submitted this 27th day of October 2023.

                                                */s/ Jesse A. Buss*
                                                Jesse A. Buss, OSB No. 122919
                                                Willamette Law Group, PC
                                                *Attorney for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-35107

I am the attorney or self-represented party.

**This brief contains** 2,866 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

● complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Jesse A. Buss  **Date** 10/27/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

Form 8                                                              Rev. 12/01/22