No. 23-35107

_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT
_____

COMMITTEE TO RECALL DAN HOLLADAY; JEANA GONZALES;
ADAM MARL,

      Plaintiffs - Appellants,

          v.

JAKOB WILEY, City Recorder for the City of Oregon City, in his official
capacity,

      Defendant - Appellee,

STATE OF OREGON,

      Intervenor - Defendant - Appellee.
_____

APPELLEE STATE OF OREGON'S
PETITION FOR REHEARING EN BANC
_____

Appeal from the United States District Court
for the District of Oregon
_____

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone:  (503) 378-4402
benjamin.gutman@doj.oregon.gov

Attorneys for Appellee

_____
_____

# TABLE OF CONTENTS

RULE 35 STATEMENT ....................................................................................1

BACKGROUND ............................................................................................2

ARGUMENT ..................................................................................................4

    A.    The *Angle* test warrants en banc review. ........................................5

    B.    Laws regulating recall elections are a compelling example of the *Angle* test's shortcomings. ........................................9

    C.    This case is a good vehicle for revisiting *Angle*. ..........................11

CONCLUSION................................................................................................13

ATTACHMENT

# TABLE OF AUTHORITIES

## Cases Cited

*Angle v. Miller*,
    673 F.3d 1122 (9th Cir. 2012)................ 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*,
    782 F.3d 520 (9th Cir. 2015)....................................................................6

*Clarno v. People Not Politicians Oregon*, 1
    41 S. Ct. 206 (2020) ..................................................................................6

*Dobrovolny v. Moore*,
    126 F.3d 1111 (8th Cir. 1997)...................................................................8

*Fair Maps Nevada v. Cegavske*,
    463 F. Supp. 3d 1123 (D. Nev. 2020) ......................................................6

*Initiative & Referendum Inst. v. Walker*,
    450 F.3d 1082 (10th Cir. 2006).................................................................8

*Jones v. Markiewicz-Qualkinbush*,
    892 F.3d 935 (7th Cir. 2018).....................................................................8

*Linthicum v. Wagner*,
    94 F.4th 887 (9th Cir. 2024).....................................................................7

*Little v. Reclaim Idaho,*
    140 S. Ct. 2616 (2020) ...................................................... 1, 6, 7

*Marijuana Policy Project v. United States,*
    304 F.3d 82 (D.C. Cir. 2002) ...................................................8

*Meyer v. Grant,*
    486 U.S. 414 (1988) ...................................................7

*Molinari v. Bloomberg,*
    564 F.3d 587 (2d Cir. 2009) ...................................................8

*Nevada Commission on Ethics v. Carrigan,*
    564 U.S. 117 (2011) ...................................................7

*O'Connor v. Nevada,*
    27 F.3d 357 (9th Cir. 1994) ...................................................3

*People Not Politicians Oregon v. Clarno,*
    472 F. Supp. 3d 890 (D. Or.),
    *stay granted,* 141 S. Ct. 206,
    *remanded,* 826 F. App'x 581 (9th Cir. 2020)...........................6

*People Not Politicians Oregon v. Clarno,*
    826 F. App'x 581 (9th Cir. 2020)................................... 2, 9, 11

*Pierce v. Jacobsen,*
    44 F.4th 853 (9th Cir. 2022)...................................................5

*Reclaim Idaho v. Little,*
    826 F. App'x 592 (9th Cir. 2020)................................... 8, 9, 11

*Reclaim Idaho v. Little,* 469 F. Supp. 3d 988 (D. Idaho),
    *stay granted,* 140 S. Ct. 2616,
    *remanded,* 826 F. App'x 592 (9th Cir. 2020)...........................6

*Republican Party v. Waihee,*
    709 P.2d 980 (Haw. 1985)...................................................11

## Constitutional and Statutory Provisions

Alaska Stat. § 15.45.610 ...................................................11

Ariz. Const. Art. VIII, pt. 1 § 1...................................................11

Idaho Code § 34-1704...................................................11

Mont. Code § 2-16-619...................................................11

Nev. Rev. Stat. § 306.015 ...................................................................11

Or. Const., Art. II § 18 .......................................................................2

Or. Rev. Stat. § 249.875(1)................................................................2

U.S. Const., Amend. I................................. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13

U.S. Const., Amend. XI ...............................................................3, 12

Wash. Const. Art. I, § 34 ..................................................................11

## Other Authorities

National Conference of State Legislatures,
    *Recall of State Officials* (2021), *available at*
    https://www.ncsl.org/elections-and-campaigns/recall-of-state-officials
    (last visited June 3, 2024).......................................................11

---------------------

## RULE 35 STATEMENT

This case offers the Court an opportunity to reconsider *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), a First Amendment decision that raises a question of exceptional importance about laws governing voter initiatives and recall petitions.  As the panel here construed it, *Angle* subjects those laws to strict scrutiny if they "significantly inhibit" the ability of proponents to place the measures on the ballot, meaning that "reasonably diligent" campaigns cannot "normally" qualify for the ballot.  673 F.3d at 1133.  The panel concluded that *Angle* was binding precedent on the recall petition at issue here and, applying that test, reversed and remanded for the district court to determine whether plaintiffs should be allowed to replead to state a claim under *Angle*. (Slip op. at 4, 7).

*Angle* is out of step with the law outside of the Ninth Circuit and has been heavily criticized.  In *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020), four justices recognized the circuit split and predicted that the Supreme Court would reject the approach *Angle* took.  *Id.* at 2616–17 (Roberts, C.J., concurring). Judge Nelson has similarly called on this Court to reconsider *Angle* en banc. *People Not Politicians Oregon v. Clarno*, 826 F. App'x 581, 584 (9th Cir.

2020) (R. Nelson, J., dissenting) ("Though we do not reach the merits of this issue here, I recommend reviewing *Angle* en banc in a future case.").

The *Angle* test is an extraordinary intrusion on states' choices about how to organize their political processes. It effectively means that states that choose to allow voter initiatives or recall elections at all must make those mechanisms a routine event. It gives federal courts license to rewrite state laws governing the preconditions for invoking those mechanisms, such as signature requirements and time limits. Under *Angle*, most states' election laws are vulnerable to free-ranging challenges. Nothing in the First Amendment requires that result, and it is time for this Court to correct the course.

## BACKGROUND

Under Oregon law, a public official must stand for a recall election if at least 15 percent of electors sign a petition supporting recall. Or. Const. art. II, § 18. The law sets a 90-day period for the proponents of the recall to collect and submit those signatures. Or. Rev. Stat. § 249.875(1).

Plaintiffs here organized a successful recall campaign against the mayor of Oregon City, Oregon. (E.R. 159–61). They nonetheless sued for (among other remedies) nominal damages and prospective relief, arguing that that the 90-day limit on recall petitions violates the First Amendment as interpreted in *Angle* because most recall campaigns in Oregon fail largely "due to lack of

adequate time to gather signatures."  (E.R. 166, 173).  The state intervened to

defend the constitutionality of the law.  (E.R. 370 (motion), 379 (docket entry)).

     The district court concluded that plaintiffs' facial First Amendment claim

was justiciable because at least one plaintiff planned to participate in organizing

future recall petitions.  (E.R. 29, 42).  On the merits, the court applied *Angle* but

concluded that plaintiffs' allegations failed to state a claim because they "have

not pleaded the requisite facts to show that 'reasonably diligent' petitions

cannot 'normally' qualify for a recall election."  (E.R. 49).  The court denied

plaintiffs permission to replead on the ground that it would be futile to do so.

(E.R. 4).[1]

     On appeal, the state defended the district court's ruling in part by arguing

that the 90-day time limit did not trigger strict scrutiny under the First

Amendment even if it caused most recall elections to fail.  (State Appellee's Br.

19–24).  The state argued that *Angle*'s suggestion to the contrary either was

dicta or should not be extended from the context of voter initiatives (which

*Angle* involved) to recall petitions.  (*Id.*).

---

[1] The district court dismissed plaintiffs' state constitutional claim based on Eleventh Amendment immunity.  (E.R. 40–41).  The panel reversed, (slip op. 2), and the state does not seek rehearing on the Eleventh Amendment issue. Should this Court uphold dismissal of the federal claim, the district court will likely decline to exercise supplemental jurisdiction over the state claim. *See, e.g.*, *O'Connor v. Nevada*, 27 F.3d 357, 363 (9th Cir. 1994).

4
A panel of this Court disagreed and reversed in part. The panel
concluded that this Court's precedents treated the *Angle* test as "binding in
previous election cases." (Slip op. 4). It also held that the "logic" of *Angle*—
that laws that "increase[e] the number of elections" implicate the First
Amendment because they "affect the total quantum of speech on a particular
issue"—applies "equally to laws regulating recall petitions." (*Id.*). Under the
*Angle* test, the Court held that the complaint as currently pleaded did not state a
claim, because its factual allegations were too conclusory to trigger strict
scrutiny and the law survives less exacting review. (*Id.* at 5–6). But the panel
held that the district court abused its discretion in denying leave to amend,
because the court did not adequately explain why plaintiffs would be unable to
allege facts showing that most recall petitions fail because of the 90-day time
limit. (*Id.* at 7–8).

## ARGUMENT

Recall elections are meant to be extraordinary measures, a safety valve
for extreme situations where ordinary scheduled elections are insufficient to
reflect the democratic will. The First Amendment does not require states to
make recall elections—or other direct-democracy mechanisms, like
initiatives—routine or easy to mount. *Angle* erred in suggesting otherwise, and
this case presents an excellent vehicle for the Court to revisit the issue.

**A.  The *Angle* test warrants en banc review.**

This Court seems to have adopted the *Angle* test inadvertently.  But its consequences are significant and unjustifiable, and it deserves further attention—and disavowal—by the en banc Court.

*Angle* upheld, against a facial First Amendment challenge, a Nevada law that required initiative proponents to obtain a certain number of signatures in each of the state's congressional districts to place an initiative on the ballot. 673 F.3d at 1126–27.  This Court "assume[d]" that the law would be subject to strict scrutiny if it "significantly inhibit[ed] the ability of initiative proponents to place initiatives on the ballot."  *Id.* at 1133.  But it concluded that the plaintiffs' assertions about the law's burdens were "too vague, conclusory and speculative" to meet that standard.  *Id.* at 1134.  This Court therefore held that strict scrutiny did *not* apply, and it went on to uphold the law under less exacting review.  *Id.* at 1134–35.

By its terms, *Angle* merely assumed without deciding that strict scrutiny would apply to state laws that make it more difficult to place a measure on the ballot.  But as the panel noted, this Court has treated the *Angle* test as binding precedent, establishing that a law must satisfy strict scrutiny if "reasonably diligent" proponents cannot normally qualify a measure for the ballot.  (Slip op. 4 (citing *Pierce v. Jacobsen*, 44 F.4th 853, 860–66 (9th Cir. 2022); and *Chula*

*Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 534, 536 (9th Cir. 2015) (en banc)).

The district courts in this circuit also have treated the *Angle* test as binding First Amendment precedent and have wielded it to rewrite state elections laws. For example, during the Covid-19 pandemic a district court reduced the Oregon Constitution's requirement for a proposed state constitutional amendment from 149,360 signatures to 58,789 signatures. *People Not Politicians Oregon v. Clarno*, 472 F. Supp. 3d 890 (D. Or.), *stay granted*, 141 S. Ct. 206, *remanded*, 826 F. App'x 581 (9th Cir. 2020). Other district courts similarly have ordered states to extend the deadlines or otherwise relax the requirements for collecting signatures for ballot measures. *See, e.g.*, *Reclaim Idaho v. Little*, 469 F. Supp. 3d 988, 1002–03 (D. Idaho) (ordering the state to extend the signature deadline for a proposed constitutional amendment by 48 days and to accept digital signatures), *stay granted*, 140 S. Ct. 2616, *remanded*, 826 F. App'x 592 (9th Cir. 2020); *Fair Maps Nevada v. Cegavske*, 463 F. Supp. 3d 1123 (D. Nev. 2020) (invalidating the statutory signature deadline for a proposed constitutional amendment; Nevada did not appeal).

The Supreme Court has twice stayed such injunctions, indicating that a majority of the justices have doubts about *Angle*. *Little*, 140 S. Ct. 2616; *Clarno v. People Not Politicians Oregon*, 141 S. Ct. 206 (2020). Four justices

voiced those doubts expressly in *Little*, explaining that "[e]ven assuming that the state laws at issue implicate the First Amendment, such reasonable, nondiscretionary restrictions are almost certainly justified by the important regulatory interests in combating fraud and ensuring that ballots are not cluttered with initiatives that have not demonstrated sufficient grassroots support." 140 S. Ct. at 2617 (Roberts, C.J., concurring).

The *Angle* test cannot be squared with basic First Amendment principles. The First Amendment does not confer a right "to use governmental mechanics to convey a message." *Linthicum v. Wagner*, 94 F.4th 887, 893 (9th Cir. 2024) (quoting *Nevada Commission on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011)). Yet the *Angle* test does just that: It requires strict scrutiny merely because a law "make[s] it less likely that proponents will be able to garner the signatures necessary to place an initiative on the ballot," on the theory that such a law it "limit[s] their ability to make the matter the focus of statewide discussion." *Angle*, 673 F.3d at 1133. The First Amendment of course protects the *speech* used to gather signatures. *See Meyer v. Grant*, 486 U.S. 414, 421–23 (1988) (circulation of a petition to signatories is speech). But there is no First Amendment right to use ballot access to convey a message.

Most other circuits reject *Angle*'s application of the First Amendment to initiative and recall petitions. The Seventh Circuit, for example, held that

because there is no "constitutional right to place referenda on the ballot," the validity of restrictions on ballot access turns on "whether the rule has a rational basis, not on the First Amendment." *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 937–38 (7th Cir. 2018); *see also Molinari v. Bloomberg*, 564 F.3d 587, 602 (2d Cir. 2009) (the difficulty of placing a measure on the ballot "is insufficient to implicate the First Amendment" as long as there is no restriction on communication of ideas); *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1100 (10th Cir. 2006) (en banc) (drawing a distinction between "laws that regulate or restrict the communicative conduct of persons advocating a position in a referendum, which warrant strict scrutiny, and laws that determine the process by which legislation is enacted, which do not"); *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997) ("[T]he difficulty of the process alone is insufficient to implicate the First Amendment, as long as the communication of ideas associated with the circulation of petitions is not affected."); *Marijuana Policy Project v. United States*, 304 F.3d 82, 86 (D.C. Cir. 2002) (holding that "the First Amendment imposes no restriction on the withdrawal of subject matters from the initiative process").

*Angle* also has been criticized in this Court by Judge Nelson, who "encourage[d] future evaluation of the legal test we adopted in *Angle*." *Reclaim Idaho v. Little*, 826 F. App'x 592, 602 (9th Cir. 2020) (R. Nelson, J.,

dissenting); *see also People Not Politicians Oregon*, 826 F. App'x at 591 (R. Nelson, J., dissenting) (same). Judge Nelson noted that if *Angle* requires strict scrutiny merely because state laws make it less likely for reasonably diligent proponents to be able to place their measure on the ballot, "it is discordant with established First Amendment principles." *Reclaim Idaho*, 826 F. App'x at 602 (R. Nelson, J., dissenting). In no other area do "First Amendment protections turn on whether the speaker was sufficiently diligent while engaged in expression." *Id.* at 603. Judge Nelson stated that "[i]f *Angle* truly stands for how it is being applied—conditioning constitutional protections on the diligence of the speaker or mandating strict scrutiny of all laws imposing any burden on political speech—*Angle* must be revisited en banc in a future case and brought in line with fundamental First Amendment principles." *Id.*

**B.     Laws regulating recall elections are a compelling example of the *Angle* test's shortcomings.**

The cases discussed above involved voter initiatives, not recall petitions. But as the panel noted, the logic underlying the *Angle* test would apply equally to any context involving voter-driven ballot access, including recalls. (Slip op. 4). That logic is particularly weak in the context of recall petitions. *Angle* assumed that laws making it difficult to place an initiative on the ballot could implicate "core political speech" by limiting the proponents' ability to make the measure "the focus of statewide discussion." 673 F.3d at 1133. Whatever force

that concern may have in the context of voter-sponsored initiatives, it makes little sense in the context of recall elections. Public officials have time-bound terms and must stand for election regularly. The focused discussion created by a recall election is one that can be expected to take place in general elections no matter how the law might restrict the recall process specifically. At most, laws that restrict additional recall elections channel discussion about those officials' performance into a predictable election calendar. But that does not implicate the First Amendment any more than laws that limit an official's term to four years rather than two, or two years rather than one. Predictable terms of several years promote the stability of government. The First Amendment does not require the federal or state government to adopt shorter terms to increase political discourse about public officials' performance. The panel erred in suggesting otherwise. (Slip op. 4 (concluding that the First Amendment is implicated by laws that affect the timing or frequency of elections)).

Even if this case is limited to recall petitions rather than initiatives, it warrants en banc review by this Court. Eight of the nine states in this circuit have state laws allowing voters to recall elected officials, and the ninth—Hawaii—allows recall of local officials. National Conference of State Legislatures, *Recall of State Officials* (2021), *available at* https://www.ncsl.org/elections-and-campaigns/recall-of-state-officials (last

visited June 3, 2024); *see also Republican Party v. Waihee*, 709 P.2d 980 (Haw. 1985). Many of those statutes set deadlines for gathering signatures that are similar to Oregon's 90 days. Idaho Code § 34-1704 (75 days); Mont. Code § 2-16-619 (3 months); Nev. Rev. Stat. § 306.015 (90 days). All but one of the states with longer deadlines have higher signature thresholds than Oregon's 15 percent. Alaska Stat. § 15.45.610 (25 percent); Ariz. Const. art. VIII, pt. 1 § 1 (25 percent); Wash. Const. art. I, § 34 (25 percent). If Oregon's statute is vulnerable to challenge under the First Amendment, all of those statutes are as well.

**C.     This case is a good vehicle for revisiting *Angle*.**

The procedural posture of this appeal makes it an uncommonly good vehicle for the Court to reexamine *Angle* en banc. Many appeals involving *Angle*, like elections appeals generally, arise in the context of preliminary injunctions tied to a fast-approaching election, and those appeals frequently go moot if not decided in a matter of weeks. *See, e.g.*, *Reclaim Idaho*, 826 F. App'x at 594 (noting that the Supreme Court's stay meant that the case would shortly go moot); *People Not Politicians Oregon*, 826 F. App'x at 582 (same). This Court typically must effectively decide the merits either in the context of a stay motion or based on extraordinarily expedited briefing and argument. Neither of those mechanisms provides sufficient time for careful consideration

by the en banc Court. And Eleventh Amendment immunity frequently precludes all but prospective relief, because the defendants typically are state officials.

This case is different. The election at issue was over long before the district court ruled, but plaintiffs' request for nominal damages from a local official prevent their facial First Amendment claim from going moot. (Slip op. 4). The district court also found that one plaintiff's allegations satisfy the mootness exception for claims that are capable of repetition and likely to evade review in the future. (E.R. 29). This Court therefore can resolve the appeal and reexamine *Angle* without having to proceed on an expedited basis. And because the claim is facial rather than as applied, it presents a clean legal vehicle for deciding the First Amendment question in general rather than as tethered to a particular set of facts.

To be sure, the stakes are somewhat lower at this stage of the litigation than in other cases involving *Angle*. Plaintiffs—who succeeded in their recall efforts—thus far have been unable to state a claim under *Angle*, and they may be still unable to do so on remand either because the district court declines to allow them to amend their complaint or because the amendment fails. But if the en banc Court agrees that laws like the 90-day deadline at issue here simply do not trigger strict scrutiny under the First Amendment, there will be no need for

a remand on the First Amendment claim at all. And if that claim is remanded, it is hard to predict what course it may take and whether it will ultimately result in another appeal that allows this Court to revisit *Angle*. The most opportune time to do so is now.

## CONCLUSION

This Court should grant rehearing en banc on the First Amendment issue and affirm the district court's judgment dismissing the First Amendment claim with prejudice.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


/s/ Benjamin Gutman
BENJAMIN GUTMAN #160599
Solicitor General
benjamin.gutman@doj.oregon.gov

Attorneys for Intervenor - Defendant-
Appellee
State of Oregon

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellee State of Oregon's Petition for Rehearing En Banc is proportionately spaced, has a typeface of 14 points or more and contains 2,900 words.

DATED:  June 11, 2024

/s/  Benjamin Gutman

BENJAMIN GUTMAN  #160599
Solicitor General
benjamin.gutman@doj.oregon.gov

Attorney for Intervenor - Defendant-
Appellee
State of Oregon

# CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2024, I directed the Appellee State of

Oregon's Petition for Rehearing En Banc to be electronically filed with the

Clerk of the Court for the United States Court of Appeals for the Ninth Circuit

by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

/s/  Benjamin Gutman
_____
BENJAMIN GUTMAN  #160599
Solicitor General
benjamin.gutman@doj.oregon.gov

Attorney for Intervenor - Defendant-
Appellee
State of Oregon

**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

APR 29 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COMMITTEE TO RECALL DAN
HOLLADAY; et al.,

             Plaintiffs-Appellants,

  v.

JAKOB WILEY, City Recorder for the City
of Oregon City, in his official capacity,

             Defendant-Appellee,

STATE OF OREGON,

             Intervenor-Defendant-
Appellee.

No.    23-35107

D.C. No. 3:20-cv-01631-YY

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted April 4, 2024
Portland, Oregon

Before:  OWENS and FRIEDLAND, Circuit Judges, and RAYES,[**] District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

Plaintiffs Jeana Gonzales, Adam Marl, and the Committee to Recall Dan Holladay (collectively, "Plaintiffs") appeal the dismissal of their lawsuit challenging under the federal and Oregon constitutions the 90-day signature-gathering deadline for Oregon recall petitions imposed by Oregon Revised Statute § 249.875(1). Although the Complaint fails to state a claim under federal law, the district court's reasons for denying leave to amend on that claim were erroneous, as were its reasons for holding that it lacked jurisdiction over the state law claim and the federal claim for nominal damages and declaratory relief. We therefore remand for the district court to reconsider whether to grant leave to amend on the federal claim, whether to exercise supplemental jurisdiction over the state law claim, and whether to certify any question related to Plaintiffs' state law claim to the Oregon Supreme Court.

1. Defendant, the City Recorder of Oregon City, is not entitled to sovereign immunity under the Eleventh Amendment or *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Local government officials are not ordinarily entitled to sovereign immunity. *See Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979). Neither party contends that the City is an arm of the state under *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), *cert petition docketed*, No. 23-6922 (Mar. 7, 2024), or any other test, so Defendant cannot benefit from the sovereign immunity accorded to arms of the

state.

Nor do any of the other cases upon which Defendant relies show that Defendant has sovereign immunity. The test articulated in *McMillian v. Monroe County*, 520 U.S. 781 (1997), analyzes whether a municipal official was acting as a final policymaker for the state or the municipality for the purposes of determining whether to hold the official's local government employer liable for that official's actions under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). *See McMillian*, 520 U.S. at 784-86; *see also, e.g.*, *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000). Even assuming Defendant is correct that our court has expanded this test to the sovereign immunity context, that would simply mean that a person acting as a final policymaker for the state is entitled to sovereign immunity. Here, no party argues that Defendant was acting as a final policymaker, either for the State or the City, when applying the 90-day deadline. Neither Oregon Revised Statute § 249.875(1) nor Oregon City Charter Chapter VI, § 26 suggests that the City Recorder had any discretion in this context. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

The test in *Buffin v. California*, 23 F.4th 951 (9th Cir. 2022), also does not show that Defendant has sovereign immunity. In *Buffin*, we articulated a test to determine whether a state could be held liable for attorneys' fees under 42 U.S.C. § 1988 and did not apply that test to determine whether any official was entitled to

sovereign immunity.  *Id.* at 960, 963 n.5.  Our court has never subsequently applied that test to determine whether an official was entitled to sovereign immunity.

2. Because Defendant is not entitled to sovereign immunity and because Plaintiffs have requested nominal damages in addition to declaratory and injunctive relief, this case is not moot as to any claim by any Plaintiff.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).

3. Plaintiffs have failed to state a claim under the First Amendment.  We have treated the test in *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), as binding in previous election cases.  *See Pierce v. Jacobsen*, 44 F.4th 853, 860-66 (9th Cir. 2022); *Chula Vista Citizens for Jobs and Fair Competition v. Norris*, 782 F.3d 520, 534, 536 (9th Cir. 2015) (en banc).  The logic underlying the *Angle* test applies equally to laws regulating recall petitions as to laws regulating initiatives, so the same test should apply to both contexts.  Recall elections affect the total quantum of speech on a particular issue by affecting the timing and context of an election— therefore causing voters to focus on different topics—as well as by increasing the number of elections in many situations.

Plaintiffs have not alleged facts sufficient to subject the 90-day deadline to strict scrutiny under the *Angle* test because their allegations fail to show that the deadline "significantly inhibit[s] the ability of [recall] proponents to place [a recall] on the ballot."  *Angle*, 673 F.3d at 1133.  Plaintiffs would need to show that, "in

light of the entire statutory scheme regulating ballot access, 'reasonably diligent'" recall proponents cannot "normally gain a place on the ballot," and instead "will rarely succeed in doing so." *Id.* (quoting *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008)). But the facts alleged in the Second Amended Complaint show only that Plaintiffs faced significant barriers to collecting enough signatures within the 90-day deadline under the specific circumstances they faced at the time— during the COVID-19 pandemic, under emergency orders that limited public gatherings and required social distancing—which is insufficient to support their facial challenge. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (explaining that "a plaintiff can only succeed in a facial challenge by 'establishing that no set of circumstances exists under which the Act would be valid,' *i.e.,* that the law is unconstitutional in all of its applications" (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987))). Plaintiffs' conclusory allegations that "it is well-established that most recall campaigns fail to obtain the requisite number of petition signatures," and "[t]his is, in large (and obvious) part, due to lack of adequate time to gather signatures" are also insufficient to allow Plaintiffs to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The 90-day deadline survives "less exacting review" because it "furthers 'an important regulatory interest.'" *Angle*, 673 F.3d at 1132, 1135 (quoting *Prete v.*

*Bradbury*, 438 F.3d 949, 961, 969 (9th Cir. 2006)).  Whether a law furthers an

important regulatory interest is a question that may be decided at the motion to

dismiss stage.  *See, e.g.*, *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1012,

1017-19 (9th Cir. 2002); *see also Caruso v. Yamhill County ex rel. Cnty. Comm'r*,

422 F.3d 848, 861-62 (9th Cir. 2005).

The 90-day deadline serves the important regulatory interest of ensuring that

the recall effort has sufficient grassroots support before holding a recall election.

*See Angle*, 673 F.3d at 1135.  The 90-day deadline serves this purpose by ensuring

that there are enough people at some given time who support recalling the official.

The 90-day deadline also serves the important regulatory interest of

preventing abuse of the recall process.  *See John Doe No. 1 v. Reed*, 561 U.S. 186,

197 (2010).  Without the deadline, recall proponents could collect signatures and

then wait to submit them, either to use them as a threat against the official or to

time the recall election to manipulate the outcome.

4. The district court abused its discretion in denying leave to amend.  *See AE*

*ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (holding

that a district court abuses its discretion by denying leave to amend "unless

amendment would be futile or the plaintiff has failed to cure the complaint's

deficiencies despite repeated opportunities" and explaining that "[a] district court

also abuses its discretion when it commits an error of law").

Two of the district court's reasons for holding that amendment would be futile—sovereign immunity and mootness—were legally erroneous. As we have explained, Defendant is not entitled to sovereign immunity, and this case is not moot as to any claim by any Plaintiff.

The district court's reliance on the letter sent from Plaintiffs' counsel to Defendant during the signature-gathering period was also erroneous. The fact that Plaintiffs were confident, given the levels of public support for their particular recall effort, that they would be able to gather the signatures under non-COVID conditions does not render it impossible for Plaintiffs to allege facts showing that recall proponents *in general* will not *normally* be able to collect enough signatures because of the 90-day deadline.[1] *See Angle*, 673 F.3d at 1133.

The district court's only other reason, that the data Plaintiffs would add "would not establish the link between failed petitions and the alleged severe burden of the 90-day time restriction," was also an abuse of discretion. Because Plaintiffs asserted that their data would show such a link, this is not a ground on which we can affirm the denial of leave to amend absent explanation from the

---

[1] The district court was permitted to consider the letter because it was attached to the complaint and is therefore treated as part of the complaint. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

district court, which was lacking.[2]  We therefore vacate the denial of leave to amend and remand for further proceedings in which the district court should either grant leave to amend on the federal claim or provide a clear explanation for not doing so.

As we explained above, the district court's dismissal of the state law claims on *Pennhurst* grounds was erroneous.  But whether the district court will ultimately exercise supplemental jurisdiction over the state law claim may depend on whether it grants leave to amend on the federal claim or, if so, dismisses the federal claim again after amendment.  *See* 28 U.S.C. § 1367(c)(3).  On remand, the district court should therefore first reconsider whether to grant leave to amend on the federal claim, then determine whether to exercise supplemental jurisdiction over the state law claim in light of that decision, and, if so, whether to certify Plaintiffs' state law question to the Oregon Supreme Court.

For the foregoing reasons, we **AFFIRM** dismissal of the Second Amended Complaint but **VACATE** the denial of leave to amend and **REMAND** for further proceedings.

---

[2] Plaintiffs also have not been given repeated chances to amend their complaint to cure the current deficiency.