No. 23-35107

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COMMITTEE TO RECALL DAN HOLLADAY,
JEANA GONZALES, and
ADAM MARL,
*Plaintiffs – Appellants*,

v.

JAKOB WILEY, City Recorder for Oregon City, in his official capacity,
*Defendant – Appellee*,

and

STATE OF OREGON,
*Intervenor-Defendant – Appellee.*

## APPELLANTS' RESPONSE TO APPELLEE STATE OF OREGON'S PETITION FOR REHEARING EN BANC

On Appeal from the United States
District Court of Oregon, Honorable Michael W. Mosman
Case No: 3:20-CV-01631-YY

Jesse A. Buss, OR Bar No. 122919
Willamette Law Group, PC
411 Fifth Street, Oregon City OR 97045-2224
Tel: 503-656-4884, Email: jesse@WLGpnw.com
*Attorney for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

**I. Introduction** ...............................................................................................1

**II. Background** ................................................................................................1

**III. Argument** ...................................................................................................3

    A. This Court has already affirmed *Angle* en banc ............................................3

    B. *Meyer v. Grant* controls ................................................................................6

    C. Remand to the district court is appropriate ...................................................9

**IV. Conclusion** ................................................................................................10

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) .................................................*passim*

*Ariz. Right to Life Political Action Comm. v. Bayless*,
    320 F.3d 1002 (9th Cir. 2003) ....................................................................7

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*,
    782 F.3d 520 (9th Cir. 2015) (en banc) ............................................3, 5, 6, 7, 8

*Fair Maps Nev. v. Cegavske*, 463 F.Supp.3d 1123 (D. Nev. 2020) ..........................5

*Libertarian Party of Wash. v. Munro*, 31 F.3d 759 (9th Cir. 1994) .........................5

*Little v. Reclaim Idaho*, 140 S. Ct. 2616 (Mem) (2020) ...................................3, 6, 8

*Meyer v. Grant*, 486 U.S. 414 (1988) ......................................................1, 4, 5, 6, 7, 8

*Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) ......................................................5

*PEST Comm. v. Miller*, 626 F.3d 1097, 1107 (9th Cir. 2010) .................................5

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) ................................................5, 7

**Constitutions**

U.S. Constitution, 1st Amendment ...................................................................*passim*

U.S. Constitution, 14th Amendment ........................................................................2

Oregon Constitution, Article II, Section 18 .......................................................1 ,2

**Statutes**

Or. Rev. Stat. § 249.875(1) ...................................................................................1, 8

## I. Introduction

The State is candid about its goal: convincing the en banc Court to overturn *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012). But the en banc Court already affirmed *Angle* in 2015. And despite some rumblings from a minority of the justices on the U.S. Supreme Court, *Angle* remains firmly rooted in *Meyer v. Grant*, 486 U.S. 414 (1988), which, at least for now, remains good law. So, as further explained below, the State of Oregon's petition for rehearing en banc should be denied.

## II. Background

The Oregon Constitution reserves to the people the right to recall any elected official. Or. Const., Art. II, § 18(1). If a recall petitioner gathers enough signatures, then a recall election will be held. *Id.*, § 18(2)-(6). Importantly, the Oregon Constitution sets no time limitation for gathering signatures and does not authorize the Oregon Legislature to impose such a time limitation.

And yet the Oregon Legislature adopted a statute purporting to limit signature gathering to 90 days. Or. Rev. Stat. § 249.875(1).

So, whereas under the Oregon Constitution a recall petitioner has *years* to gather sufficient signatures to trigger a recall election, the statute purports to severely constrain that right. One of the effects of limiting signature gathering to 90 days is that it largely protects statewide officeholders, including members of the

Oregon Legislature, from recall; it is much more difficult to obtain a sufficient number of petition signatures in 90 days than it is to obtain them in several years.

Within this legal context, in 2020 the Committee to Recall Dan Holladay, Jeana Gonzales, and Adam Marl ("Appellants") were proponents of a municipal recall petition directed against Oregon City Mayor Dan Holladay. The statutory 90-day signature gathering time limitation nearly doomed the campaign, but Appellants were extraordinarily diligent and ultimately submitted enough petition signatures, qualified for the ballot, and Holladay was recalled. Before they qualified for the ballot, however, Appellants brought this action challenging the 90-day statutory limitation under the First and Fourteenth Amendments to the U.S. Constitution and Article II, section 18 of the Oregon Constitution.[1]

As relevant here, applying the *Angle* framework the district court dismissed Appellant's First Amendment challenge for failure to state a claim and denied leave to amend the complaint. The Ninth Circuit panel also applied *Angle* and agreed with the district court that Appellants had failed to state a First Amendment claim under that standard, but reversed and remanded for the district court to consider allowing Appellants to replead.

---

[1] The merits of Appellants' state law claim is not at issue in this appeal.

The State, seeking to topple a standard that—on occasion—supports direct democracy at the expense of the power of lawmakers and other elected officials, now seeks en banc reconsideration of *Angle*.

### III. Argument

**A. This Court has already affirmed *Angle* en banc**

The State's primary attack on *Angle* is based on a concurrence signed by four members of the U.S. Supreme Court in *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (Mem) (2020) (Roberts. C.J., and Alito, Gorsuch, Kavanaugh, J.J., concurring). Before turning to that argument, however, it's worth noting that the Ninth Circuit, sitting en banc, has already reviewed and approved of *Angle*.[2]

In *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520 (9th Cir. 2015) (en banc), this Court carefully, intentionally, and repeatedly applied *Angle* to find that the State of California and the City of Chula Vista did not violate the First Amendment by: (1) requiring that a ballot measure proponent be an elector (rather than a corporation); or (2) requiring that the proponent's name appear on the face of the initiative petition. *Id.* at 526, 534-37. These were not mere string-cite references to *Angle*, but direct expository applications. So it is really the en banc decision in *Chula Vista* that the State is attacking, not just *Angle*.

---

[2] The State did not go out of its way to make this point in its petition for en banc review.

3

The State's related argument that this Court "inadvertently" adopted the *Angle* test is similarly misleading. Dkt. 47 at 9. It is also wrong. Specifically, the State argues that "*Angle* merely *assumed without deciding* that strict scrutiny would apply" in certain circumstances, and that subsequent courts have misconstrued *Angle* by treating it as binding precedent. *Id.* (emphasis added). That claim is demonstrably false, and both the district court and Ninth Circuit panel were correct to reject it.

The *Angle* court was clearly articulating the applicable legal standard when it used the word "assume." For context, it is worth quoting *Angle* at length:

> "The plaintiffs nonetheless contend that the All Districts Rule imposes a severe burden on core political speech because it makes it more difficult and expensive to qualify an initiative for the ballot. There is no First Amendment right to place an initiative on the ballot. *See Meyer*, 486 U.S. at 424, 108 S.Ct. 1886 (recognizing that 'the power of the initiative is a state-created right'). Regulations that make it more difficult to qualify an initiative for the ballot therefore do not necessarily place a direct burden on First Amendment rights.
>
> "Such regulations, however, may indirectly impact core political speech. As *Meyer* recognized, when an initiative fails to qualify for the ballot, it does not become 'the focus of statewide discussion.' *Meyer*, 486 U.S. at 423, 108 S.Ct. 1886. Ballot access restrictions may therefore 'reduc [e] the total quantum of speech on a public issue.' *Id. Thus, as applied to the initiative process, we assume that ballot access restrictions place a severe burden on core political speech, and trigger strict scrutiny, when they significantly inhibit the ability of initiative proponents to place initiatives on the ballot.*
>
> "This is similar to the standard we apply to ballot access restrictions regulating candidates. In that setting, we have held that 'the burden on plaintiffs' rights should be measured by whether, in

> light of the entire statutory scheme regulating ballot access, 'reasonably diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so.' *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) (quoting *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994)); *see also PEST Comm. v. Miller*, 626 F.3d 1097, 1107, 1110 (9th Cir. 2010) (looking to the *Nader* standard for guidance in evaluating regulation of the initiative process)."

*Angle*, 673 F.3d at 1133 (emphasis added). Clearly, the *Angle* court was not proposing a hypothetical or "assuming" anything for the sake of argument. It was articulating the relevant legal standard.

This was no accident, and the *Angle* court was not creating a new standard from whole cloth. Rather, as the en banc *Chula Vista* court recognized, *Angle* was merely repeating a long-established standard that had also been articulated, for example, in *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), among other cases. 782 F.3d at 534; *see also Fair Maps Nev. v. Cegavske*, 463 F.Supp.3d 1123, 1141 (D. Nev. 2020) ("In *Angle*, the Ninth Circuit took what is basically the *Anderson-Burdick* framework and applied it to the specific context of Nevada's initiative process for amending the Nevada Constitution."). And, as addressed in the following section, *Angle*, *Prete*, and all other cases articulating the strict scrutiny standard in ballot access cases are expressly—and correctly—based on the U.S. Supreme Court's binding decision in *Meyer*.

And so the State has erected a straw man, framing *Angle* as a renegade and "inadvertent" decision instead of what is actually is: just a typical brick in the well-

fortified *Meyer* wall. *Chula Vista*, decided en banc, is another such brick. As discussed next, only the U.S. Supreme Court can knock down that wall, and so far it hasn't done so. Unless and until it does, there is no reason to revisit the legal framework reflected by, among others, *Angle* and *Chula Vista*.

### B. *Meyer v. Grant* controls

The State boldly claims that *Angle* "has been heavily criticized," Dkt. 47 at 1, but then gives only two examples (one from a minority concurrence at the U.S. Supreme Court, and one from a single Ninth Circuit judge), and neither is convincing. While it's true that four members of the Supreme Court have, on the shadow docket, signaled their interest in undermining *Meyer*, and have specifically targeted the Sixth and Ninth Circuits as possible means of doing so, four is not a majority. *See Reclaim Idaho*, 140 S. Ct. at 2616 (concurrence). And the only other criticism of *Angle* the State points to has come from Judge Nelson of this Court. *See, e.g.,* Dkt. 47 at 12-13. Not one of the other authorities cited by the State criticizes *Angle* or *Chula Vista*.

As the law stands, *Meyer*, on which *Angle* and *Chula Vista* rest, remains good law. And *Meyer* controls here. There, the Supreme Court said:

> "Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech' [protected by the First Amendment.]

> "The refusal to permit appellees to pay petition circulators restricts political expression in two ways: First, it limits the number of voices who will convey appellees' message and the hours they can speak and, therefore, limits the size of the audience they can reach. *Second, it makes it less likely that appellees will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion*."

486 U.S. at 421-23 (emphasis added). It is on the italicized language (describing *Meyer* "Category 2" regulations) that *Angle* and *Chula Vista* are based. In other words, under *Meyer* a regulation that "makes it less likely" that a sufficient number of petition signatures can be gathered implicates the First Amendment.

Most of the time election regulations will pass muster under *Meyer*. See *Angle*, 673 F.3d at 1132 ("Lesser burdens … trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.")(citing *Prete v. Bradbury*, 438 F.3d at 961, as quoting *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002 (9th Cir. 2003)). But "[r]egulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Id. Meyer* Category 2 regulations are included in the latter category. As the *Meyer* court said, such regulations impose on "an area in which the importance of First Amendment protections is 'at its zenith.'" 486 U.S. at 425. "For that reason the burden that [the state] must overcome to justify [such laws] is well-nigh insurmountable." *Id.* In other words, *Meyer* says that strict scrutiny applies. So do *Angle* and *Chula Vista*.

7

The four-justice concurrence in *Reclaim Idaho* knows that *Meyer* controls, even if they'd like to undermine it. In that concurrence, Chief Justice Roberts acknowledges that, at a minimum under current law, regulations that make petition drives "more challenging [] implicate the First Amendment [if they] restrict political discussion *or petition circulation*." 140 S.Ct. at 2616 (concurrence) (emphasis added).

"Petition circulation" is obviously implicated by this case. Oregon's statutory 90-day signature gathering limitation imposes a bar on petition circulation after 90 days. Or. Rev. Stat. § 249.875(1). That is a restriction on core political speech under *Meyer*, and as Chief Justice Roberts implicitly acknowledged in his *Reclaim Idaho* concurrence, unless and until that caselaw is overruled (which will take more than four votes), *Meyer* Category 2 regulations like Oregon's 90-day signature gathering limitation remain subject to strict scrutiny. As such, *Angle* and *Chula Vista* remain good law, and there is no reason for this Court to embark on another en banc review of the issue.[3]

---

[3] Assuming there is a circuit split (as noted above, the State has pointed to no sister circuits that have criticized *Angle*, and the undersigned is aware of none), overruling *Angle* and *Chula Vista* would not resolve the split. In his *Reclaim Idaho* concurrence, Chief Justice Roberts cites with disapproval *both* the Sixth and Ninth Circuits on this issue. 140 S.Ct. at 2616. So even if Ninth Circuit law was changed as the State urges, the supposed circuit split would remain.

### C. Remand to the district court is appropriate

The Ninth Circuit panel remanded this case to the district court to consider whether to allow Appellants to amend their complaint to attempt to properly allege a claim under *Angle*. And of course, the State now asks the en banc Court to overrule *Angle* (and *Chula Vista*). Oddly, the State also asks the en banc Court to "dismiss[] the First Amendment claim with prejudice." Dkt. 47 at 17. But if the en banc Court overrules *Angle* and *Chula Vista*, then the proper procedure is not dismissal of the complaint, but instead remand to allow Appellants to amend their complaint to attempt to state a claim under whatever standard or test this Court establishes in *Angle's* and *Chula Vista*'s place. Notably, the State does not say what that replacement standard should be.

In sum, whether or not this Court grants rehearing en banc, and whether or not it alters the longstanding *Angle* and *Chula Vista* framework, remand to the district court for further proceedings—and specifically to consider amendments to the complaint—is the proper procedure.

## IV. Conclusion

For the above reasons, the State of Oregon's petition for rehearing en banc should be denied.

Respectfully submitted this 26th day of July 2024.

>/s/ Jesse A. Buss
Jesse A. Buss, OSB No. 122919
Willamette Law Group, PC
*Attorney for Plaintiffs-Appellants*

# FORM 11. CERTIFICATE OF COMPLIANCE FOR PETITIONS FOR REHEARING/RESPONSES

**9th Cir. Case Number(s):** 23-35107

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 and 40-1, the response to the petition for panel rehearing/petition for rehearing en banc is: Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and contains 2,227 words in compliance with Circuit Rule 40-1(a).

**Signature:** */s/* Jesse A. Buss

**Date:** July 26, 2024